**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JUNE 10, 2021

_González, C.J._
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Respondent, | ) | No. 98493-0 |
| v. | ) | |
| CHRISTOPHER R. JOHNSON, | ) | |
| Petitioner. | ) | Filed : June 10, 2021 |

GONZÁLEZ, C.J.— Christopher Johnson was convicted of child sex crimes. He challenges a condition of community custody as unconstitutionally overbroad and vague. This condition will require Johnson to access the Internet only through filters approved by his community custody officer. We agree that this condition could implicate Johnson's constitutional rights and must be applied carefully by his future community custody officer. However, when read in light of Johnson's convictions for attempted second degree child rape, attempted sexual abuse of a minor, and communication with a minor for immoral purposes, we conclude that the condition is neither overbroad nor vague. Accordingly, we affirm.

*State v. Johnson*, No. 98493-0

FACTS

This case began with a sting operation conducted by the Missing and Exploited Children Task Force, which looked for potential child sex predators. Task force members advertised on the Craigslist website, seeming to invite sex. Johnson responded to one of these advertisements. Over the next few hours, he and a task force member pretending to be a 13 year old girl exchanged text messages and e-mail where they discussed meeting for sex, possibly in exchange for money. They arranged a rendezvous in a public place. Johnson was arrested not long after he arrived at the rendezvous.

Johnson was charged with attempted second degree rape of a child, attempted commercial sexual abuse of a minor, and communication with a minor for immoral purposes. Johnson's defense theory was that he went on to Craigslist looking for casual sex with an adult woman and that he had no intention of having sex with a child. A jury found Johnson guilty as charged.

At sentencing, the State specifically asked the judge to prohibit Johnson from accessing

> the worldwide web through any means including but not limited to the internet, unless authorized. I'm not asking he never can, but that it be authorized by the [community custody officer] so that that could be tracked.

2

*State v. Johnson*, No. 98493-0

> That was the way in which this crime was committed.  And that is absolutely critical to combatting recidivism and to protecting the community.

Verbatim Report of Proceedings (May 18, 2018) at 16.  Johnson strenuously objected:

> We are objecting to the majority of the probation conditions that [the State] asked for. No access to the worldwide web. That is simply too broad. I don't know how a person would function in today's world without accessing the web. You can't send an e-mail to your wife. You can't look for a job. You can't sell your car. I think it's appropriate that there be some monitoring, there are filters that can be imposed. Those are appropriate. But simply saying no access to the worldwide web unless specifically authorized by a [community custody officer] is overly broad.

*Id.* at 37-38.  The judge clearly wrestled with this issue:

> I don't want to exclude Mr. Johnson entirely from accessing the web. . . . But I think the issue has to be with regards to filtering. And so I don't know how to deal with that at this point. I don't want to exclude him entirely. But I think that there has to be some mechanism to control so he's not on web sites related to the conduct here. So I don't know how you want to deal with that.
> [THE STATE]: Except through a filter approved by [the Department of Corrections]?
> THE COURT: Yeah. Filter approved or something like that.

*Id.* at 51-52.  The judge ultimately decided that Johnson shall "not use or access the World Wide Web unless specifically authorized by [his community custody officer] through approved filters" as a condition of community custody.  Clerk's Papers at 99.

Johnson appealed on several grounds.  The Court of Appeals affirmed on all issues.  *State v. Johnson*, 12 Wn. App. 2d 201, 205-06, 460 P.3d 1091 (2020).  We

3

*State v. Johnson*, No. 98493-0

granted review limited to Johnson's challenge to the limitation on his future

Internet use.  196 Wn.2d 1001 (2020).

ANALYSIS

Johnson challenges this community custody condition as unconstitutionally

overbroad and vague.  We review community custody conditions for abuse of

discretion.  *See State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008) (citing

*State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)).  Among other things,

"[d]iscretion is abused if it is exercised on untenable grounds or for untenable

reasons." *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002) (citing

*State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

It is manifestly unreasonable to impose an unconstitutional condition of

community custody.  *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d

847 (2018) (citing *Bahl*, 164 Wn.2d at 753).  But "[l]imitations upon fundamental

rights are permissible, provided they are imposed sensitively." *Riley*, 121 Wn.2d

at 37 (citing *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir.

1975)).  Restrictions on Internet access have both due process and First

Amendment implications.  *See Packingham v. North Carolina,* __ U.S. __, 137 S.

Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017) (citing *Reno v. Am. Civil Liberties

Union*, 521 U.S. 844, 868, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997)); *Blondheim

v. State*, 84 Wn.2d 874, 878, 529 P.2d 1096 (1975) (citing *Grayned v. City of*

4

*State v. Johnson*, No. 98493-0

*Rockford*, 408 U.S. 104, 114, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)); U.S.

CONST. amend. I. Judges may restrict a convicted defendant's access to the

Internet, but those restrictions must be narrowly tailored to the dangers posed by

the specific defendant. *State v. Padilla*, 190 Wn.2d 672, 678, 416 P.3d 712 (2018);

*United States v. Holena*, 906 F.3d 288, 290 (3d Cir. 2018) (citing *United States v.*

*Albertson*, 645 F.3d 191, 197 (3d Cir. 2011)).

Johnson characterizes this condition as prohibiting him from using the

Internet without his community corrections officer's approval. We disagree with

this characterization. When taken in light of the judge's oral comments, we

conclude it merely requires that Johnson use the Internet only through filters that

have been approved by his community corrections officer. It should not be read to

require him to seek permission every time he would use the Internet.[1] With this

characterization in mind, we turn to his arguments.

### 1. OVERBREADTH

Johnson argues that the restriction on his Internet use is not narrowly

tailored to further the goals of the Sentencing Reform Act of 1981, ch. 9.94A

---

[1] We respectfully disagree with the dissent's characterization of the condition as a "total ban on Johnson's access to the Web, subject to exceptions yet to be determined." Dissent at 6. Properly read, this condition merely requires Johnson to use approved filters. We acknowledge that in an unpublished decision, the Court of Appeals found a community custody condition of "'No internet use unless authorized by treatment provider and Community Custody Officer'" was unconstitutionally vague and overbroad. *State v. Forler*, No. 79079-0-I, slip op. at 26-28 (Wash. Ct. App. June 10, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/790790.pdf,

5

*State v. Johnson*, No. 98493-0

RCW. We disagree. The act's stated goals include preventing recidivism, protecting the public, and providing offenders with opportunities to improve themselves. RCW 9.94A.010. Johnson committed his crimes using the Internet. A proper filter restricting his ability to use the Internet to solicit children or commercial sexual activity will reduce the chance he will recidivate and will also protect the public. While a blanket ban might well reduce his ability to improve himself, a properly chosen filter should not. We encourage Johnson's future community custody officer to have a meaningful conversation with Johnson about appropriate Internet use and to choose filters that will accommodate Johnson's legitimate needs.

Johnson also argues that the limitation on his Internet use is similar to limitations imposed by a North Carolina statute the United States Supreme Court struck down in *Packingham*, 137 S. Ct. at 1733-34, 1736-37. North Carolina essentially barred anyone convicted of certain sex offenses from many popular social media sites, including Facebook and Twitter. *Id.* at 1733, 1737. The Court assumed that intermediate scrutiny applied, found the ban was not narrowly tailored to further a significant governmental interest, and concluded that it burdened substantially more speech than was necessary to further the

---

*review denied*, 194 Wn.2d 1011 (2019). That condition is substantively different from the one present here, and the State did not petition for review of that holding.

*State v. Johnson*, No. 98493-0

government's interest. *Id.* at 1736-38. The Court also noted that a more narrowly

tailored restriction might well survive constitutional scrutiny:

> it can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor. Specific laws of that type must be the State's first resort to ward off the serious harm that sexual crimes inflict.

*Id.* at 1737 (citation omitted).

We conclude that the community custody condition here is significantly

narrower than the statute struck in *Packingham*. Johnson is not prohibited from

accessing any particular social media site. Instead, he is required to use the

Internet only through filters approved by his community custody officer. While

requiring Johnson to use an overzealous filter might violate the First Amendment,

that is a question of appropriate enforcement and a question for another day.[2]

We conclude that this condition is not unconstitutionally overbroad.

## 2. VAGUENESS

A condition of community custody is unconstitutionally vague if it either

fails to give fair warning of what is forbidden or fails to give ascertainable

---

[2] Johnson also suggests that the condition is potentially underinclusive because it restricts his access to the World Wide Web, not the entire Internet. A substantially underinclusive law may raise First Amendment concerns when, for example, the law claims a secular purpose, burdens a particular religious practice, and does not target similar conduct outside of that practice. *See, e.g., Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543-44, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993). But even assuming that the condition would not allow a community custody officer to restrict Internet use outside the World Wide Web (an issue that is

7

standards that will prevent arbitrary enforcement. *Bahl*, 164 Wn.2d at 752-53

(citing *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

"If 'persons of ordinary intelligence can understand what the [law] proscribes,

notwithstanding some possible areas of disagreement, the [law] is sufficiently

definite.'" *Id.* at 754 (alterations in original) (quoting *Douglass*, 115 Wn.2d at

179).

In *Bahl*, we held that a condition of community custody prohibiting the

offender from possessing either pornography or sexually explicit material related

to his deviancy was unconstitutionally vague. 164 Wn.2d at 743 (citing record),

758, 761. We concluded that the term "pornography" was itself vague, and since

Bahl had not been diagnosed with sexual deviancy, prohibiting him from

possessing material related to it was "utterly lacking in any notice of what behavior

would violate it." *Id.* at 758, 761. By contrast, we found a condition that required

Bahl not to "'frequent establishments whose primary business pertains to sexually

explicit or erotic material'" was clear and did not violate due process protections.

*Id.* at 743 (quoting record), 759.

Similarly, in *Nguyen*, we rejected a claim that a prohibition on possessing

"sexually explicit material" was unconstitutionally vague. 191 Wn.2d at 681. We

---

not before us), Johnson points us to no case where a potentially underinclusive condition of community custody has created a constitutional infirmity.

concluded a person of ordinary intelligence could discern its meaning, especially as it was defined in a statute. *Id.* at 680 (citing *Bahl*, 164 Wn.2d at 759, and RCW 9.68.130(2)). We also found a condition requiring the defendant to inform her community corrections officer of any "dating relationship" was not unconstitutionally vague because "dating relationship" was commonly understood in a fairly concrete way. *Id.* at 681-82. Like the conditions approved in *Bahl* and *Nguyen*, this provision gives Johnson fair warning of what is forbidden to him—accessing the Internet without the use of approved filters.

Johnson's primary argument is that this condition lacks sufficiently specific standards to prevent arbitrary enforcement by his future community custody officer. Read in isolation, we might be inclined to agree. But read in a commonsense fashion in the context of the judgment and sentence, and related documents that will be available to Johnson's future community corrections officer, we find that there are sufficient benchmarks to prevent arbitrary enforcement.[3]

We faced a somewhat similar argument in *State v. Wallmuller*, 194 Wn.2d 234, 449 P.3d 619 (2019)). *Wallmuller* concerned a community custody provision

---

[3] For this reason, we respectfully disagree with the dissent that this condition is vague for lack of ascertainable standards. Those standards can be found in the documents that shed light on the meaning of the judgment and sentence. *See generally In re Pers. Restraint of Coats*, 173 Wn.2d 123, 138-39, 267 P.3d 324 (2011) (courts may consult documents that illuminate errors on the face of a judgment and sentence (citing *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 866 n.2, 50 P.3d 618 (2002))). We are aware of no constitutional or statutory rule that would confine

that provided, "'The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, campgrounds, and shopping malls.'" 194 Wn.2d at 237 (quoting record). Wallmuller challenged this condition as inherently vague. *Id.* at 236. It was one of three conditions that related to children. Of the other two, one restricted his contact with minor children except for situations where another adult aware of his conviction is present (among other requirements) and the other barred him from participating in youth programs. *Id.* at 237 (quoting record). We concluded that when read in context of the illustrative list and the other conditions of community custody, the condition was not vague and did not invite arbitrary enforcement because "an ordinary person can understand the scope of the prohibited conduct." *Id.* at 245.

Similarly, in this case, we find that any danger of arbitrary enforcement is constrained by other documents related to Johnson's convictions. Most specifically, the crimes themselves and the statement of probable cause provide sufficient direction to prevent arbitrary enforcement. The statement of probable cause contains a detailed recitation of the facts that led up to Johnson's arrest, including the role Johnson's Internet use played. When read in conjunction with this condition of community custody, these documents provide meaningful

---

the community custody officer to the four corners of the judgment. While as a practical matter, in past eras, that might be all the officer has access to, in these days of digital court records, no such limitations should exist.

*State v. Johnson*, No. 98493-0

benchmarks to restrict arbitrary enforcement. Fairly read in the context of Johnson's crimes, he should not be allowed to use the Internet to solicit commercial sex or sex with children. An appropriate filter should be selected with this in mind.

The trial judge made an admirable attempt to draw a narrow condition. We conclude he succeeded. When read in the light of Johnson's convictions and the facts that underlie them, there are sufficient relevant benchmarks to prevent arbitrary enforcement.

CONCLUSION

We conclude that the limitation on Johnson's future Internet use is neither overbroad or vague. Accordingly, we affirm.

*State v. Johnson*, No. 98493-0

González, C.J.

WE CONCUR:

Johnson, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

Stephens, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Johnson (Christopher R.)*

No. 98493-0

MADSEN, J. (dissenting)—The majority holds that the community custody condition precluding Christopher Johnson from using or accessing the World Wide Web without a community-custody-officer-approved filter is sufficiently narrow and is not overbroad or vague. Majority at 7, 11. Because the condition does not restrict Johnson from accessing particular social media websites and requires approved Internet filters, the majority reasons that the condition is not overbroad. But, as written, the challenged condition makes filters—unspecified and approved at the discretion of a community corrections officer—a prerequisite to any Web access. Indeed, the majority admits that "requiring Johnson to use an overzealous filter might violate the First Amendment [to the United States Constitution]" yet relegates such concern as a question of "appropriate enforcement." *Id*. at 7.

Of course, the point of a vagueness and overbreadth challenge is to protect against arbitrary enforcement based on the lack of ascertainable standards for enforcement. *E.g.*, *State v. Bahl*, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008). The majority's own reasoning undermines its conclusion that this condition is not overbroad when it

No. 98493-0
Madsen, J., dissenting

encourages "Johnson's future community custody officer to have a meaningful conversation with Johnson about his appropriate Internet use and choose filters that will accommodate his legitimate needs." Majority at 6. Surely the constitution requires more than a "meaningful conversation" between two unequal participants in order to protect against the overbroad restriction on the First Amendment rights to which Johnson is entitled.

For the reasons discussed below, I would reverse and remand this case to the trial court to specify the type of filters appropriate for Johnson's Web use rather than leaving it to the discretion of a community custody officer. Accordingly, I dissent.

Analysis

Freedom of speech is an essential right every American citizen enjoys. U.S. CONST. amend. I. Such a right can be infringed on only by a limitation that is narrowly tailored to serve a significant government interest. *E.g.*, *Packingham v. North Carolina*, ___ U.S. ___, 137 S. Ct. 1730, 1736, 198 L. Ed. 2d 273 (2017); *Bahl*, 164 Wn.2d at 757-58. However, a defendant's First Amendment right to free speech may be restricted if reasonably necessary to accomplish the essential needs of the state and public order, and is sensitively imposed. *Bahl*, 164 Wn.2d at 757; *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993) (citing *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975)). Here, Johnson challenges the community custody condition prohibiting him from accessing the Web without authorization from his community custody officer as both unconstitutionally vague and overbroad.

2

No. 98493-0
Madsen, J., dissenting

### 1. Vagueness

A condition of community custody is unconstitutionally vague if it (1) fails to give fair warning of what is forbidden or (2) fails to give ascertainable standards that will prevent arbitrary enforcement. *Bahl*, 164 Wn.2d at 752-53 (citing *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). "If 'persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite.'" *Id.* at 754 (alterations in original) (quoting *Douglass*, 115 Wn.2d at 179). Where community custody conditions prohibit material protected by the First Amendment, stricter standards of definiteness are required. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 679, 425 P.3d 847 (2018) (citing *Bahl*, 164 Wn.2d at 753).

As to the first prong of the vagueness test, I agree that Johnson's condition is not vague because it clearly bans *any* access to the World Wide Web without authorization from Johnson's community custody officer. It is the second prong of the vagueness inquiry that, in my view, renders this condition vague: the condition does not protect against arbitrary enforcement because it does not provide ascertainable standards for enforcement. *See Bahl*, 164 Wn.2d at 752-53. Indeed, the majority essentially directs a future custody officer to be reasonable and advises Johnson to speak with that officer so that filters selected for Johnson's Web use will not violate his First Amendment rights. *See* majority at 6. Such advice is only necessary *because* there are no ascertainable standards for enforcement.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98493-0
Madsen, J., dissenting

A condition of release may be rendered vague when it vests too much discretion in community corrections officers to engage in arbitrary enforcement. *Bahl*, 164 Wn.2d at 753. In *Bahl*, this court stated that a community custody officer who "direct[s] what falls within the condition only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement." *Id*. at 758. Similarly, we should hold that placing the criteria for enforcement of Johnson's Web use in the hands of a future custody officer renders this condition vague.

I am also unconvinced by the majority's reliance on Johnson's crimes themselves and statement of probable cause. Majority at 10. The statement of probable cause recites the facts that led to Johnson's arrest, including the role Johnson's Internet use played. *Id*. Combined with the challenged community custody condition, the majority holds that these documents provide "meaningful benchmarks to restrict arbitrary enforcement." *Id*. at 10-11. But reviewing courts do not look to all the surrounding documents to determine whether a community condition is unconstitutionally vague. Rather, courts examine the language of the condition itself. *E.g.*, *Bahl*, 164 Wn.2d at 754 (considering the plain meaning of terms in a community custody provision). This is so because the vagueness doctrine mandates that the State provide citizens with fair warning of proscribed conduct. *See State v. Padilla*, 190 Wn.2d 672, 681, 416 P.3d 712 (2018). Defendants are not required to guess what behavior is prohibited. *See Douglass*, 115 Wn.2d at 179 (noting that a criminal provision is "'unconstitutional when it forbids conduct in terms so vague

4

No. 98493-0
Madsen, J., dissenting

that persons of common intelligence must guess at its meaning and differ as to its application'" (quoting *Burien Bark Supply v. King County*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986))).

To determine whether citizens have received fair warning of prohibited conduct, Washington courts have consulted statutory and dictionary definitions of terms within a custody provision. *See, e.g.*, *Bahl*, 164 Wn.2d at 759; *Nguyen*, 191 Wn.2d at 680-81. Courts have consulted surrounding documents when determining whether a condition is crime related. *See* RCW 9.94A.030(10) (defining "crime-related prohibition" as a court order prohibiting conduct that "directly relates to the circumstances of the crime for which the offender has been convicted"); *State v. Jones*, 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003) (striking a custody provision banning consumption of alcohol because no evidence showed that alcohol contributed to a defendant's offenses and was thus not crime related).[1] However, construing the language of a challenged community custody condition pursuant to a vagueness challenge requires scrutinizing the language itself first and foremost. Courts may look to the context in order to determine what the provision means, *Bahl*, 164 Wn.2d at 754, but in this case the provision is clear—Johnson cannot know what behavior is prohibited until his community custody officer tells him so.

---

[1] *See also State v. Wallmuller*, 2015 WL 7259587, at *3 (reviewing declaration of probable cause to determine whether a custody provision was crime related); *State v. Haskins*, 2019 WL 6318034, at *2 (same).

5

No. 98493-0
Madsen, J., dissenting

Despite upholding the challenged provision and affirming that Johnson will not be required to guess what behavior is prohibited, the majority cannot remain consistent because it exhorts the community custody officer to select "appropriate" filters for Johnson's Web access—implicitly recognizing that Johnson will have to guess at the prohibited behavior. The First Amendment offers poor protection indeed if an individual's rights depend on the goodwill of probation officers.

2. Overbreadth

A condition is unconstitutionally overbroad if it encompasses conduct that is not crime related. *See State v. Lee*, 12 Wn. App. 2d 378, 401, 460 P.3d 701 (2020). Here, the total ban on Johnson's access to the Web, subject to exceptions yet to be determined, also renders the condition overbroad.

The United States Supreme Court opined on the unique interaction between the Internet and free speech in *Packingham*. There, the Court reviewed a state law prohibiting a registered sex offender from accessing "'a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages.'" *Packingham*, 137 S. Ct. at 1733 (quoting N.C. GEN. STAT. ANN. §§ 14-202.5(a), (e) (2009)). The Court held that the provision violated the First Amendment even though the law exempted websites that provided only e-mail, chat, or instant messenger services, as well as websites operating primarily for commercial transactions. *Id*. at 1734. The Court explained, "A fundamental principle of the First Amendment is that all persons have access to places

6

No. 98493-0
Madsen, J., dissenting

where they can speak and listen, and then, after reflection, speak and listen once more." *Id*. at 1735. The "'vast democratic forums of the Internet,'" such as social networking sites, allow users to debate religion and politics, search for employment, and petition the government directly via elected representatives. *Id*. (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 868, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997)). Thus, the Court warned, judges "must exercise extreme caution before suggesting that the First Amendment provides scant protection for access to vast networks" online. *Id*. at 1736.

The majority here emphasizes the nature of Johnson's crimes and says Johnson should not be allowed to use the Internet to solicit commercial sex or sex with children. No one can disagree. But, as the *Packingham* Court warned when it recognized that child sexual abuse is a most serious crime and that states may pass laws to protect children, such laws "must not 'burden substantially more speech than is necessary'" to further that legitimate goal. *Id*. (quoting *McCullen v. Coakley*, 573 U.S. 464, 486, 134 S. Ct. 2518, 189 L. Ed. 2d 502 (2014)). The same is true here. Just as the Court held that the North Carolina law was unconstitutionally overbroad because it barred access to "the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge," this court should hold that the complete ban on Johnson's access to the Web, with undefined exceptions, is also unconstitutional. *Id*. at 1737. "[T]he State may not enact this complete bar to the exercise of First Amendment rights on websites integral to the fabric of our modern society and culture." *Id*. at 1738.

7

No. 98493-0
Madsen, J., dissenting

The majority rejects Johnson's argument that *Packingham* applies because the community custody condition here is significantly narrower than the unconstitutional statute at issue in that case. Majority at 7. But there is no way of knowing whether Johnson's community custody condition is narrower than the statute in *Packingham* because the condition here is a complete ban on Web use subject only to the permission of a corrections officer, which may be granted under unspecified conditions.

The Third Circuit Court of Appeals recently applied *Packingham* to invalidate a condition of release. There, as in this case, the trial court banned the defendant from using the Internet without his probation officer's approval and required the defendant to allow the installation of monitoring and filtering software on his computer. *United States v. Holena*, 906 F.3d 288, 290 (3d Cir. 2018). The Court of Appeals reversed, stating, "The goal of restricting Holena's internet use is to keep him from preying on children. The District Court must tailor its restriction to that end." *Id*. at 293. Borrowing from the reasoning in *Packingham*, the court ruled the trial judge "may not prevent Holena from doing everyday tasks that have migrated to the internet, like shopping, or searching for jobs or housing. The same is true for his use of websites conveying essential information, like news, maps, traffic, or weather." *Id*. at 294. "Under *Packingham*, blanket internet restrictions will rarely be tailored enough to pass constitutional muster." *Id*. at 295. "Their 'wide sweep precludes access to a large number of websites that are most unlikely to facilitate the commission of a sex crime against a child.'" *Id*. (quoting *Packingham*, 137 S. Ct. at 1741 (Alito, J., concurring)).

8

No. 98493-0
Madsen, J., dissenting

Important to the present case, the Third Circuit noted that although the condition at issue permitted Internet use with the probation officer's prior approval, the condition "gave the probation office no guidance on the sorts of internet use that it should approve." *Id.* at 293. Similarly here, the blanket prohibition on Web use without prior authorization of the community custody officer is unconstitutional.

3. *State v. Forler*

The Court of Appeals in this case acknowledged that Division One recently came to a different conclusion regarding a similar community custody condition in *State v. Forler*, No. 79079-0-I, slip op. at 27-28 (Wash. Ct. App. June 10, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/790790.pdf, *review denied*, 194 Wn.2d 1011 (2019). In *Forler*, the defendant challenged a condition that precluded "'internet use unless authorized by treatment provider and Community Custody Officer.'" *Id.* at 25. Forler was convicted of attempted rape of a child by soliciting an undercover officer through a Craigslist forum. The Court of Appeals concluded that the blanket restriction of "no internet use" went beyond tailoring Forler's use to a crime-related prohibition. Echoing *Packingham*, the court noted:

> Today, internet use is ubiquitous, allowing people to easily accomplish many daily tasks and functions, including but not limited to: finding a job or housing, managing banking and investment accounts, paying bills, receiving directions, listening to music, reading the news, and connecting with friends and family. The list provided is only a short list of what can be accomplished using the internet. But none relate to Forler's conviction. Furthermore, many devices such as televisions are "smart devices" and require an internet connection to access their "smart" features. Under the

9

No. 98493-0
Madsen, J., dissenting

> broad community custody condition here, Forler would be in violation if he used a "smart device" that was connected to the internet.

*Id*. at 27-28.

The court correctly concluded that the condition did not protect against arbitrary enforcement "because it does not provide ascertainable standards for enforcement" and fails because it is unconstitutionally overbroad. *Id*. at 27.

Contrary to the majority's assertion, the provision here is nearly identical to the community custody provision in *Forler*, which stated, "No Internet use unless authorized by treatment provider and Community Custody Officer." *Id*. at 25. The community custody provision in this case stated Johnson shall "not use or access the World Wide Web, unless specifically authorized by [his community custody officer] through approved filters." Clerk's Papers at 99; *see also* majority at 3. Both provisions have the same overbroad effect.

This court should follow its own precedent, that of the United States Supreme Court, and the guidance from the Third Circuit to hold that a blanket ban on access to the World Wide Web, except as permitted by a community custody officer's discretion, is an unconstitutional infringement on the First Amendment that far exceeds any crime-related justification.

I respectfully dissent.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98493-0
Madsen, J., dissenting

_____
Madsen, J.

_____
Gordon McCloud, J.

_____
Whitener, J.

11