**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

Respondent,

v.

JEFFREY WOLFF,

Appellant.

No. 82806-1-I

DIVISION ONE

UNPUBLISHED OPINION

CHUNG, J. — Jeffrey Wolff pleaded guilty to one count of first degree dealing in depictions of a minor engaged in sexually explicit conduct. On sentencing, the trial court imposed several special community custody conditions for sex offenders. Wolff challenges several of these conditions. The State has conceded that several prohibitions are unconstitutional and should be struck. Additionally, we conclude the conditions regulating internet access are unconstitutionally vague and overbroad as written. Therefore, we remand to the trial court to modify the community custody conditions.

FACTS

After a police investigation into online peer-to-peer sharing of child pornography, the State charged Jeffrey Wolff with one count of first degree dealing in depictions of a minor engaged in sexually explicit conduct and one count of first degree possession of depictions of a minor engaged in sexually

explicit conduct. Wolff agreed to plead guilty to one count of first degree dealing in depictions. In return, the State dropped the possession charge and recommended a low-end standard range sentence. The trial accepted Wolff's plea and subsequently sentenced him to the suggested 15 months of incarceration. Over Wolff's objections, the trial court also imposed several special community custody conditions for sex offenders. Wolff appeals five of these special conditions relating to urine/breath testing (condition 11), dating relationships (condition 6), materials containing sexually explicit conduct (condition 15), and regulation of internet access (conditions 24 and 25).

## ANALYSIS

A sentencing court has the discretion to impose crime-related prohibitions as a condition of community custody. RCW 9.94A.703(3)(f). A crime-related prohibition "means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). A "reasonable relationship" must exist between the crime of conviction and the community custody condition. State v. Nguyen, 191 Wn.2d 671, 684, 425 P.3d 847 (2018). The prohibited conduct need not be identical, but there must be some basis for the connection to the crime of conviction. Id. Appellate courts review community custody conditions for abuse of discretion and will reverse a manifestly unreasonable condition. State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015).

A trial court abuses its discretion if it imposes an unconstitutional community custody condition. State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d

619 (2019); State v. Johnson, 4 Wn. App. 2d 352, 358, 421 P.3d 969 (2018) ("community custody provisions must … pass constitutional muster"). Conditions that interfere with fundamental constitutional rights must be sensitively imposed and reasonably necessary to accomplish essential state needs and public order. Id. We review constitutional questions de novo. Wallmuller, 194 Wn.2d at 238. We do not presume that a community custody condition is constitutional. Irwin, 191 Wn. App. at 652.

I. Condition 11 Requiring Urinalysis and Breathanalysis (UA/BA Testing)

Wolff challenges Condition 11, which requires him to "[b]e available for and submit to urinalysis and/or breathanalysis upon request of the CCO and/or chemical dependency treatment provider." Unless waived by the court, the court "shall" include as a community custody condition a prohibition on controlled substances other than lawfully issued prescriptions. RCW 9.94A.703(2)(c). The court also has the discretion to impose a condition requiring a defendant to "refrain from possessing or consuming alcohol." RCW 9.94A.703(3)(e).

Wolff argues that where alcohol or controlled substances did not play a role in the underlying offense, the court may not enforce the discretionary abstention condition through UA/BA testing.[1] The State agrees that Condition 11 should be stricken because alcohol and drugs were not related to the crime. We accept the State's concession and remand to strike Condition 11 from the judgment and sentence.

---

[1] Wolff cites to State v. Greer, No. 78291-6 (Wash. Ct. App. Nov. 18, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/782916.pdf, without noting that it is unpublished. "Unpublished opinions of the Court of Appeals have no precedential value and are not binding on any court" and may be cited only "if identified as such by the citing party." GR 14.1(a).

II. Condition 6–Dating Relationships

Condition 6 states that Wolff must "[i]nform the supervising CCO and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such." Wolff claims this condition is not reasonably related to his offense or narrowly tailored to avoid violating his constitutional rights.

Washington courts have considered whether dating prohibitions are crime-related community custody conditions for sex offenders and have approved them. In State v. Autrey, the defendant sexually assaulted a minor, and the court imposed the requirement that he obtain permission of the therapist before sexual contact with anyone. 136 Wn. App. 460, 468, 150 P.3d 580 (2006). This condition was not an abuse of discretion because "the offender's freedom of choosing even adult sexual partners is reasonably related to their crimes because potential romantic partners may be responsible for the safety of live-in or visiting minors." Id.

The court in In re Sickels considered the same condition at issue in this case in the context of an offender convicted of attempted rape of a child. 14 Wn. App. 2d 51, 60-61, 469 P.3d 322 (2020). The court noted that the first two sentences of the condition, requiring the offender to inform the CCO and sexual deviancy therapist of dating relationships and to disclose sex offender status before sexual contact, are not prohibitions imposed under RCW 9.94A.703(3)(f). Id. Instead, the condition requires "affirmative conduct" governed by RCW

4

9.94A.703(3)(d), so it must be "reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." Id.; RCW 9.94A.703(3)(d). The court concluded these conditions were related to the safety of the community in that they protect the individuals the offender might date. Id.

Similarly, here, the first two sentences of Condition 6 are reasonably related to Wolff's offense. As in Autrey and Sickels, Wolff's potential romantic partners may be responsible for the safety of live-in or visiting minors. Therefore, by limiting Wolff's access to minors, the condition relates to the safety of the community and limits the risk of reoffending.

The third sentence of Condition 6, "sexual contact in a relationship is prohibited until the treatment provider approves of such," is a prohibition and, thus, must be crime-related. In re Sickels, 14 Wn. App. 2d at 61. The State concedes this condition is not related to Wolff's crime and must be stricken, stating "prohibiting [Wolff] from having sex in a relationship does not bear on Wolff's access to children, nor does it bear on preventing him from exploiting children by distributing child pornography over the Internet." We accept the State's concession and remand to strike only the third sentence of Condition 6.

III. Condition 15– Material Depicting Sexually Explicit Conduct

Wolff challenges Condition 15, which reads as follows:

Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider.

Wolff does not challenge the prohibition on sexually explicit and erotic materials. However, Wolff challenges the third category of prohibited materials, those "depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4)." According to Wolff, this part of the condition prohibits him from "possessing or viewing a wide range of films, books, television shows, and other artistic and pop cultural items," and is therefore vague and overbroad in violation of the First Amendment. The State contends that all parts of the ban on sexually explicit materials meet constitutional scrutiny. Wolff does not challenge the crime-relatedness of the prohibition on sexually explicit and erotic materials. Rather, he raises both vagueness and overbreadth challenges only as to the third part of the restriction relating to "any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4)."

A.  Vagueness challenge to Condition 15

A community custody condition is unconstitutionally vague if "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). When considering the meaning of a community custody condition, "the terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used." State v. Bahl, 164 Wn.2d 739, 754, 193 P.3d 678 (2008). "If persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." City of Spokane v. Douglass, 115 Wn.2d 171,

179, 795 P.2d 693 (1990), quoted in Nguyen, 191 Wn.2d at 679. A community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the point at which the actions would be classified as prohibited. Nguyen, 191 Wn.2d at 679. However, a community custody condition that implicates material protected under the First Amendment is held to a stricter standard of definiteness to prevent a chilling effect on the exercise of those rights. Bahl, 164 Wn.2d at 753.

In Bahl, the Washington Supreme Court addressed the term "sexually explicit" as it pertained to prohibiting an offender from visiting businesses dealing in "sexually explicit material." Id. at 758-59. The Court applied the dictionary definition of "explicit" to determine the meaning of the term as "clearly expressed sexual materials or materials that are unequivocally sexual in nature." Id. at 759. The Court concluded that with consideration of the dictionary definition, the condition was sufficiently clear. Id.

Here, Wolff has acknowledged that "sexually explicit material" includes "only materials that are 'obscene' in a constitutional sense," and, thus, he does not challenge that part of Condition 15. Nevertheless, the analysis from Bahl is instructive to interpret the term "sexually explicit conduct." Using the same dictionary definition of "explicit," Wolff's community custody condition prohibits possessing, accessing, or viewing any material depicting any person engaged in clearly expressed sexual conduct or conduct that is unequivocally sexual in nature. Also, Wolff's condition adds the additional definition from RCW 9.68A.011(4), which further clarifies that the prohibition applies to both actual and

7

simulated conduct and provides a detailed list of conduct.[2] Read together, the dictionary definition of "explicit" and the statutory definition of "sexually explicit conduct" significantly narrow the universe of prohibited content. As a result, the condition sufficiently warns Wolff against viewing content that is unequivocally sexual in nature without prior approval from his sexual deviancy provider and is not unconstitutionally vague.[3]

### B. Overbreadth challenge to Condition 15

An overbreadth challenge "goes to the question of whether [S]tate action is couched in terms so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well." In re Sickels, 14

---

[2] RCW 9.68A.011(4) includes the following definition:

"Sexually explicit conduct" means actual or simulated:
(a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
(b) Penetration of the vagina or rectum by any object;
(c) Masturbation;
(d) Sadomasochistic abuse;
(e) Defecation or urination for the purpose of sexual stimulation of the viewer;
(f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and
(g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

[3] We recognize that the court in In re Sickels, 14 Wn. App. 2d 51, 66, 469 P.3d 322 (2020), reached a different conclusion on the same type of community condition as in this case. However, we disagree with the statement that "Padilla is controlling authority that the definition incorporated from RCW 9.68A.011(4) is unconstitutionally vague." Id. at 65-66. The RCW 9.68A.011(4) definition was not at issue in Padilla; the prohibition in that case contained different language prohibiting "images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts." Padilla, 190 Wn.2d at 681. Further, even if the term "sexually explicit conduct" is broad and "includes contact such as simulated sexual intercourse that—engaged in by adults—appears in mainstream media," Sickels, 14 Wn. App. 2d at 65, that fact does not render it vague or insufficient to apprise an ordinary person of the proscribed conduct, or without standards for enforcement; the statute itself with the same definition is enforceable. We address the constitutional challenge as to overbreadth below.

8

Wn. App. 2d at 67. However, the mere fact that a community custody condition impinges on a constitutional right does not invalidate it. Id. at 69. Such limitations on fundamental rights are permissible if they are sensitively imposed and narrowly tailored to the dangers posed by the specific defendant. State v. Johnson, 197 Wash.2d 740, 744-45, 487 P.3d 893 (2021). Some custody conditions that curb fundamental rights can be analyzed categorically, without requiring a defendant-specific analysis in every case, while others require an analysis that is "delicate and fact-specific." Sickels, 14 Wn. App. 2d at 70.

Where, as here, the offender has been convicted of a pornography-related crime, a prohibition on unequivocally sexual content, specifically the acts enumerated in RCW 9.68A.011(4), is narrowly and sensitively imposed. As noted in Nguyen, "[i]t is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." 191 Wn.2d at 686. Restricting Wolff, who was convicted of dealing in depictions of minors engaged in sexually explicit conduct in violation of RCW 9.68A.050(1)(a)(ii) and RCW 9.68A.011(4)(a)-(e), from accessing material depicting any person engaged in sexually explicit conduct as defined by the same statute, "[i]s no different from requiring all drunk drivers to refrain from using alcohol or all persons convicted of drug offenses not to use drugs." Id. at 685. The prohibition was narrowly tailored to the dangers posed by Wolff. Therefore, his overbreadth challenge also fails.

9

IV. <u>Conditions 24 & 25–Regulation of Internet Access</u>

Wolff challenges two community custody conditions related to use of the internet:

> 24. No internet access or use, including email, without the prior approval of the supervising CCO and use of a monitoring system such as Covenant Eyes with reporting access provided to CCO and/or deviancy treatment provider.

> 25. No use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except without [sic] the prior approval of the supervising CCO and use of a monitory system such as Covenant Eyes with reporting access provided to CCO and/or deviancy treatment provider. The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

The sentencing judge added the handwritten statement, "it is not the court's intent that 24 + 25 will prevent Mr. Wolff from working as an arial [sic] photographer." He contends the conditions are both vague and overbroad. The State counters that the conditions pass constitutional muster based on a recent Washington Supreme Court case, <u>State v. Johnson</u>, 197 Wash.2d 740, 742, 487 P.3d 893 (2021). Nevertheless, the State agrees to remand for clarification of the condition.

As noted above, a community custody condition is unconstitutionally vague when "it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." <u>Padilla</u>, 190 Wn.2d at 677. Courts have held community custody conditions requiring further definition from CCO to be unconstitutionally vague. <u>Id.</u> at 682; <u>Irwin</u>, 191 Wn. App. at 654. In <u>Bahl</u>, the condition prohibiting access or possession of pornographic materials "as directed by the supervision Community Corrections Officer," did not adequately protect

against arbitrary enforcement. 164 Wn.2d at 754. The CCO's discretion to determine the extent of the condition "only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement." Id. at 758; see also State v. Sansone, 127 Wn. App. 630, 639, 111 P.3d 1251 (2005) (requirement that probation officer define "pornography" in community placement condition would be unnecessary if term were inherently definite). Similarly, this court struck a community custody condition that prohibited an offender from frequenting areas where minor children are known to congregate as defined by the CCO, because allowing the CCO to establish the locations left the condition vulnerable to arbitrary enforcement. Irwin, 191 Wn. App. at 655.

The United States Supreme Court has emphasized the importance of internet access, noting that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." Packingham v. North Carolina, __ U.S. __, 137 S. Ct. 1730, 1737, 198 L. Ed. 2d 273 (2017). But "the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." Id. A court may restrict a defendant's access to the internet if those restrictions are "narrowly tailored to the dangers posed by the specific defendant." Johnson, 197 Wn.2d at 745.

In Johnson, the Washington Supreme Court approved of a community custody condition that the offender shall "not use or access the World Wide Web

11

unless specifically authorized by [his community custody officer] through approved filters." Id. at 744. The Court rejected a claim that the internet prohibition was unconstitutionally vague, reasoning that "any danger of arbitrary enforcement is constrained by other documents related to" the convictions. Id. at 749. According to the Court,

> the crimes themselves and the statement of probable cause provide sufficient direction to prevent arbitrary enforcement. The statement of probable cause contains a detailed recitation of the facts that led up to Johnson's arrest, including the role Johnson's Internet use played. When read in conjunction with this condition of community custody, these documents provide meaningful benchmarks to restrict arbitrary enforcement. Fairly read in the context of Johnson's crimes, he should not be allowed to use the Internet to solicit commercial sex or sex with children. An appropriate filter should be selected with this in mind.

Id. The Court also determined the condition was not overbroad, noting that, "Johnson is not prohibited from accessing any particular social media site. Instead, he is required to use the Internet only through filters approved by his community custody officer." Id. at 746.

Unlike the condition Johnson that the court held was constitutional, the community custody condition in this case could be subject to multiple interpretations. The condition prohibits internet access "without the prior approval of the supervising CCO and use of a monitoring system." It does not specify whether the CCO's discretion applies only to selection of the internet filter or requires authorization every time internet access is desired. The community custody condition in this case raises the concern suggested by the Johnson dissent: "the condition here is a complete ban on Web use subject only to the

12

permission of a corrections officer, which may be granted under unspecified conditions." Id. at 756.

Further, the condition is unclear as to when the CCO's approval is required. For instance, it is unclear whether approval is necessary only once, upon installation of the monitoring system, or if "prior approval" is needed every time Wolff wants to access the internet, even through a filter. The very fact that the condition provokes such questions shows that it insufficiently defines the proscribed conduct. This unbridled discretion and ambiguity result in community custody conditions that are unconstitutionally vague.

Condition 25 is similarly vague, requiring CCO approval and monitoring for all uses of "computer, phone, or computer-related device with access to the Internet." This broadly applies to all internet-related devices such as smart devices or cellphones. The condition limits Wolff's ability to use these devices for constitutionally protected activities, such as routine phone calls to family and friends. The condition "sweeps constitutionally protected free speech activities within its prohibitions" and is, therefore, overbroad. City of Seattle v. Abercrombie, 85 Wn. App. 393, 397, 945 P.2d 1132 (1997).

Conditions 24 and 25 have a similar formula to the condition approved in Johnson. However, the lack of clarity in the role of the CCO makes both conditions in this case unconstitutionally vague. In addition, the conditions' application to all internet-related devices results in overbreadth. Therefore, we remand to strike the requirement of CCO's approval from conditions 24 and 25 or

13

specify that approval pertains to the monitoring software rather than every instance of desired internet access.

We remand to strike Condition 11 from the judgment and sentence and modify Conditions 6, 24, and 25.

_Chung, J._

WE CONCUR:

_Smith, A.C.J._                 _Mann, J._