

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38365-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEREMY MICHAEL LOWREY, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Jeremy Lowrey was charged with five counts of first degree possession of depictions of minors engaged in sexually explicit conduct and one count of second degree possession of depictions of minor engaged in sexually explicit conduct. Lowrey testified at trial that he was investigating child pornography for the police. During closing argument, the State made an incomplete comment about societal expectations and mistakenly stated the number of explicit images located by police. Lowrey objected, and the trial court sua sponte gave curative instructions. On appeal, Lowrey raises issues of prosecutorial misconduct and ineffective assistance of counsel. We affirm. Lowrey fails to demonstrate misconduct, and the trial court's instructions

cured any error. Defense counsel was not ineffective for failing to request additional instructions.

In his statement of additional grounds (SAG), Lowrey contends that his inability to review the electronic discovery with his attorney impacted his ability to provide a valid defense. Because this issue is not developed on the record, we decline to review it.

BACKGROUND

After receiving a tip from the National Center for Missing and Exploited Children indicating that multiple images of child pornography had been identified on a specific local internet protocol (IP) address, Detective Jennifer Margheim obtained a search warrant to identify the person to whom the IP address was registered. After pinpointing Lowrey, she obtained a second warrant to search Lowrey's residence. Detective Matt Martin testified at trial that Lowrey's computer contained over 3,000 videos and 67,186 exploitive images of children. Fifteen of these images were admitted as evidence and shown to the jury. Lowrey testified that he collected the images for eight years to help police "investigate." He did not provide evidence of law enforcement credentials and acknowledged that he never communicated any of the images to the police. Defense counsel argued this theory in closing.

The jury found Lowrey guilty of five counts of first degree possession of depictions of minors engaged in sexually explicit conduct under RCW 9.68A.070(1) and

2

one count of second degree possession of depictions of minor engaged in sexually

explicit conduct under RCW 9.68A.070(2)(a) and (b).

On appeal, Lowrey focuses on the State's closing argument. In closing, the State

argued:

> There's a word that we use a lot in this courtroom and in the statutes and in the laws of the State of Washington and that word is reasonable. Because we have presumption of society that those of us that are a member of our society are reasonable people. We actually expect people to be reasonable. We expect people to do what's right, to do the right things. And we have laws that are enacted to take action when people do things that are not reasonable.
>
> We are here today because it is not reasonable for Jeremy Lowrey to be a one man police investigation crew of child pornography on the internet. You can believe every word he said while he was testifying and still find him guilty, because his actions are not reasonable. We have to be careful not to decide cases based on sympathy or emotion or prejudice. And so, I'd like to discuss the images with you, not to inflame your emotions or prejudice but in the context of what Mr. Lowrey is saying was reasonable. You and I sat in this courtroom and Detective Margheim and Detective Martin looked through, they looked through thousands of images of kids being raped.

Report of Proceedings (RP) at 271-72. Defense counsel objected to mischaracterization

of the evidence. The court sustained the objection and instructed the jury to "recall what

the actual testimony was." RP at 272.

The State went on to argue:

> They looked through thousands of images. 96,000 images of children being raped, abused, molested, exploited. And you and I sat in the courtroom and we looked at 15. Difficult to look at. We expect as a society that when somebody sees a picture of a five year old or less with

3

her buttocks spread and another little girl licking her anus, we expect as a
society that—

RP at 272. Defense counsel objected, asserting that the State was suggesting that the

defendant should be punished because of societal norms, and the State had to "argue her

case." RP at 272. The court sustained the objection and instructed the jury to follow jury

instructions and "have in mind the Instructions that have been read and the evidence that

has been presented." RP at 272-73.

The State continued:

And moving to my second point, you don't have to believe anything
Mr. Lowrey told you because whether you believe him or not, it's not
credible. One time? Maybe. You accidentally get something that you're
like ooh, this is bad. We're not talking about one time. We're talking about
96,000 images and we're talking about 15 specific images that are on a
device that he admits using. They come into his possession because he's
clicking these random downloads and then he downloaded them on his
computer and then they're there. He's—we're not even talking about you or
me or some, you know, internet novice. We're talking about somebody that
is incredibly tech savvy, knows exactly how systems and computers and
analysis of computers and data management systems. He's a problem
solver. That's his job.
        Is it reasonable to think that the [crime] problem for him to solve is
child exploitation sexual materials on the internet? Absolutely not. We
have entire agencies devoted to that and he did nothing. He sent a report—

RP at 274. Defense counsel again objected to this statement as a mischaracterization of

the evidence, which the court overruled before instructing the jury to recall the exact

evidence. The State proceeded to argue that Lowrey's explanation of his actions for eight

years was not reasonable, credible, or believable.

4

No. 38365-2-III
*State v. Lowrey*


ANALYSIS

A.  PROSECUTORIAL MISCONDUCT

The first issue raised by Lowrey is whether the State committed prosecutorial misconduct in closing argument by (1) mischaracterizing the burden of proof as a violation of societal expectations rather than proof of the charged crime beyond a reasonable doubt, and (2) appealing to the passions of the jury by arguing that the jury viewed more images than appeared as exhibits.  At trial, Lowrey's attorney made three objections during the State's closing argument.  His first and third objections were that the State was mischaracterizing the evidence when it argued: "You and I sat in this courtroom and Detective Margheim and Detective Martin looked through, they looked through thousands of images of kids being raped—" RP at 272, and again when the State argued that "we have entire agencies devoted to that and he did nothing.  He sent a report."  RP at 274.  Lowrey also objected, indicating that the State was asking the jury to punish Lowrey based on societal norms or expectations when the State argued, "We expect as a society that when somebody sees a picture of a five year old or less with her buttocks spread and another little girl licking her anus, we expect as a society that—"[1] RP at 272.

_____

[1] On appeal, Lowrey contends that his objection to society expectations also encompassed the State's comments about reasonable people.  The record does not support this argument.

5

"A defendant's right to a fair trial is denied when the prosecutor makes improper comments, and there is a substantial likelihood that the comments affected the jury's decision." *State v. Thompson*, 73 Wn. App. 654, 663, 870 P.2d 1022 (1994). "'In order to establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (plurality opinion)). We review the trial court's ruling on an objection to closing arguments for abuse of discretion. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014).

The first question is whether Lowrey can show that the prosecutor's comments were erroneous. Prosecutors have wide latitude to argue reasonable inferences from the evidence. *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). However, the State bears the burden of proving its case beyond a reasonable doubt, and may not assert arguments that shift the burden of proof to the defendant. *State v. Emery*, 174 Wn.2d 741, 759-60, 278 P.3d 653 (2012). A prosecutor also commits misconduct by asking jurors to convict based on their emotions rather than the evidence. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (plurality opinion). And while it is misconduct for the State to argue facts not in evidence, it is not clear that simply mischaracterizing the evidence rises to the level of misconduct. *See State v. Belgarde*,

6

110 Wn.2d 504, 507, 755 P.2d 174 (1988) (misconduct to argue facts not in evidence).

Lowrey does not cite any cases supporting the latter proposition.

In this case, Lowrey fails to meet his burden of showing that the prosecutor's comments were improper and prejudicial. The prosecutor made an unfinished comment about societal expectations. Within the same sentence, the prosecutor twice used the phrase, "we expect as a society that . . . ." RP at 272. However, the prosecutor never finished this phrase because Lowrey objected, and the objection was essentially sustained.

The State did misstate the number of images and videos found on Lowrey's computer. Twice during closing, the State mistakenly referred to "96,000" images. The testimony reflects that officers found 67,186 exploitive images of children and over 3,000 videos.[2] This misstatement is not material in the context of all the evidence, the charges, and the closing arguments. Lowrey objected on both occasions, although it is unclear whether his objections were directed at the number of images. Regardless, on both occasions, the trial court orally instructed the jury to remember the actual evidence and the written jury instructions, including the direction to adhere to evidence that does not include attorney argument. While the inaccurate number of images may be

---

[2] The State was clearly commenting on the images viewed by the officers not the jury. The jury viewed 15 exhibits.

objectionable, Lowrey does not cite any authority to support his position that the mischaracterization amounts to prosecutorial misconduct.

Regardless of any error, Lowrey fails to demonstrate prejudice. To establish prejudice, the defendant must prove that there is a substantial likelihood that the misconduct affected the jury's verdict. *Thorgerson*, 172 Wn.2d at 442-43. When determining if a comment or comments are prejudicial, we review the improper comments during closing argument in the context of the entire argument, the issues, the evidence addressed in the argument, and the jury instructions. *State v. Sakellis*, 164 Wn. App. 170, 185, 269 P.3d 1029 (2011).

The trial court sustained defense counsel's objection to the societal expectation comment, and the State never finished or returned to the argument. Contrary to Lowrey's argument on appeal, the State's unfinished comment did not suggest that the jury should convict Lowrey based on societal expectations instead of its constitutional burden of proof. The State's mischaracterization of the evidence also drew an appropriate objection to which the trial court sustained and instructed the jury to recall the actual testimony. Lowrey does not otherwise address prejudice in his briefing.

Lowrey also contends that his attorney was constitutionally ineffective for failing to request a curative instruction to the State's burden-shifting argument. Because we do not find the unfinished comment erroneous, we do not need to address this compound issue. Regardless, we note that the trial court admonished the jury to refer to the jury

8

instructions provided by the court, and Lowrey does not identify any further curative instructions that could have been provided.

B. COMMUNITY CUSTODY CONDITIONS

The second issue we address is whether the community custody conditions limiting access to adult pornography are improper where they are not related to the crime of possession of child pornography. Lowrey was found guilty of six counts of possession of child pornography. In addition to sexual deviancy treatment, he was ordered to comply with the following conditions:

> 11  Do not possess or access sexually explicit materials that are intended for sexual gratification
>
> 12  Do not enter into and/or remain in any adult bookstore, peep show or other establishment(s) that sell/pander in pornographic material/entertainment or sell sexual devices or places of prostitution.
>
> 14  Do not purchase, possess, or use sexual devices without prior permission from the supervising community corrections officer and the treating sexual deviancy treatment provider.

Clerk's Papers at 154-55.

Where Lowrey failed to object to community custody conditions at the trial court level, it must first be determined whether his challenge involves manifest constitutional error. Appellate courts may consider claims of manifest constitutional error raised for the first time on appeal provided that an adequate record exists to consider the claim. RAP 2.5(a); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). Imposition

9

of an unconstitutional community custody condition is manifestly unreasonable. *State v. Sanchez Valencia*, 169 Wn.2d 782, 792, 239 P.3d 1059 (2010).

At sentencing, a judge's discretion to impose community custody conditions is restricted by statute to those that are mandatory, waivable, and discretionary. *State v. Geyer*, 19 Wn. App. 2d 321, 325, 496 P.3d 322 (2021) (citing RCW 9.94A.703(1)-(3)). Some discretionary conditions are crime related and others are more loosely connected to the offense of conviction. *Id*. at 325-26. "Crime-related prohibitions" are orders directly related to "the circumstances of the crime." RCW 9.94A.030(10). Community custody conditions must comply with statutory requirements and not excessively burden a defendant's constitutional rights. *State v. Johnson*, 197 Wn.2d 740, 746-49, 487 P.3d 893 (2021). Community custody conditions are reviewed for an abuse of discretion. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). Only after statutory and constitutional requirements are met does the abuse of discretion standard require deference to the trial court. *Id*. Conditions are upheld as "directly related" if reasonably crime related. *State v. Irwin*, 191 Wn. App. 644, 656, 364 P.3d 830 (2015).

A sentencing court may restrict materials an offender may access or possess so long as the restrictive condition must be reasonably necessary to accomplish essential state needs and public order. *Padilla*, 190 Wn.2d at 683. When the regulation implicates the First Amendment to the United States Constitution, such as possession of books and videos, it must be narrowly tailored to further the State's legitimate interest. *Id*. A

reviewing court determines whether a factual basis exists for a condition under the substantial evidence standard. *Id*. The condition need not be factually identical to a crime. *Id*.

In *State v. Padilla*, the defendant was convicted of communicating with a minor for immoral purposes, and prohibited from accessing all pornography with no distinction between child and adult pornography. *Id*. at 683-84. Access to pornography implicates the First Amendment right. *Id*. The record lacked information on the pattern of the defendant's commission of the crime and the State failed to show a connection to the compelling state interest of public safety. *Id*. Additionally, the record contained no connection between the defendant's inappropriate messaging with a child and imagery of adult nudity, therefore the Supreme Court struck the condition. *Id*. at 684.

Lowrey was convicted of possession and dealing in child pornography. His sentencing condition restricted all access to pornography without narrowing it to images of children. Lowrey was also sentenced to sexual deviancy treatment. It is unclear from the record how the absolute prohibition on pornography would serve his treatment and by extension protect the public. Given, the parallels with the *Padilla* case, it is appropriate to accept the State's concession.

C. STATEMENT OF ADDITIONAL GROUNDS

The third issue we address is whether Lowrey's inability to personally review photo evidence of sexually explicit images of children implicated his ability to mount a defense.

11

In his SAG, Lowrey contends that he was unable to personally review the evidence against him, particularly electronic discovery leading to the inability to mount an effective defense. He contends that his attorney admitted in court to being unable to review the discovery. At a pretrial hearing, Lowrey's attorney indicated that "[t]here is discovery in this case that the State can't provide me because of the nature of it." RP at 23. However, within the next week, counsel was able to view the photographic discovery and indicated he would be obtaining the redacted discovery.

To the extent that Lowrey is arguing that his inability to view the photographic and video evidence was reversible error, we disagree on this record. CrR 4.7 requires the State to provide defense counsel with copies of all evidence that supports the criminal charge except as provided by protective orders or as to matters not subject to disclosure. *State v. Boyd*, 160 Wn.2d 424, 432, 158 P.3d 54 (2007) (State appealed grant of defendant's motion for disclosure). However, in cases such as this, release of the discovery under a protection order is essential to ensure against unauthorized dissemination. *Id*. at 438. In *Boyd*, such a court order was granted after motion because Mr. Boyd required a copy of the computer hard drive for independent expert analysis to trace the image sources. *Id*. at 430-31.

Here, the record does not reflect the existence of any such request or order, or even whether counsel failed to access the materials available on police property. RAP 2.5. At trial, Mr. Lowrey conceded that he downloaded the images in question and

12

it was unnecessary to trace their source. On this record, it was not error for the State to restrict access to discovery without a protective order.

We affirm Lowrey's conviction and remand to strike community custody conditions 11, 12, and 14 from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Pennell, J.