**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | No. 55745-2-II |
| JOHNNY W. MILLER, JR., | UNPUBLISHED OPINION |
| Petitioner. | |

WORSWICK, J. — Johnny Miller seeks relief from personal restraint imposed following his convictions for three counts of first degree rape of a child and two counts of first degree child molestation arising out of acts committed against AG. Miller argues that his trial counsel was ineffective because counsel failed to (1) effectively cross-examine AG, (2) retain or consult a medical expert, and (3) investigate medical evidence. Miller also argues his sentence included an unconstitutionally vague condition. The State concedes the sentencing error.

We hold that counsel was not ineffective, but, that Miller's sentence included an unconstitutionally vague condition. We grant Miller's Personal Restraint Petition (PRP) in part and remand to the trial court to strike or revise the vague community custody condition. We otherwise deny the petition.

FACTS

Miller was AG's mother's boyfriend. Miller lived with AG, AG's mother, and AG's younger brother. When AG was between the ages of eight and eleven years old, Miller sexually abused AG almost every day. AG reported the abuse to a friend three months after Miller moved out.

After an investigation, Miller was charged with three counts of first degree rape of a child and two counts of first degree child molestation. Miller waived his right to a jury trial.

During a two-day bench trial, the State called ten witnesses, including AG, AG's brother, AG's parents, and Dr. Kimberly Copeland, a sexual abuse pediatrician. AG testified to the abusive acts. She also testified that she had experienced a burning and itching sensation after the abuse.

On cross-examination, counsel asked AG when the abuse started, the family's living arrangements, and the number of times Miller abused AG. He asked if anyone else had ever noticed or seen Miller abuse AG. He also questioned why AG never reported the abuse for three years, and AG testified that she was scared. He then specifically asked why AG never told her mother, her parents, or others and if her mother had ever told her to report any sexual abuse. Counsel then asked AG how many times Miller had raped her when she was in the fourth grade, and AG answered: "Probably about more than a hundred." 1 Report of Proceedings (RP) at 42.

Counsel elicited from AG that she experienced burning and itching after the assaults, and counsel asked AG "did you ever have to go to your mom and tell her that you had some problems in your vaginal area – it was itching – it was burning?" 1 RP at 46. Initially, AG said she did not. Counsel followed up by asking whether her mom ever had her examined by a doctor for any pain or discomfort in her private areas, and AG said she did not recall. Counsel then asked about specifics of how and why AG told her friend about the abuse, and he asked about AG's mental health. AG testified that she had tried to harm herself following the abuse.

The State then called AG's brother who testified that Miller would spend time with AG alone in the bedroom behind a locked door on a daily basis. AG's parents testified that AG had been complaining of pain in her private area, and that AG had suicidal thoughts.

2

The trial court admitted a recorded interview between AG and Dr. Copeland, who had examined AG. During AG's conversation with Dr. Copeland, she said that Miller made her watch pornographic materials. AG also informed Dr. Copeland that she was suicidal and was concerned about those thoughts. AG also described specific ways in which Miller had abused her, including that he had been abusing her ever since she was eight years old by inappropriately touching her and having intercourse with her. AG also complained of pain and scarring in her private areas.

Miller's counsel asked the court to disregard the information introduced at the interview:

> I realize why this was played but there's some stuff that came out that was not brought out when [AG] was on the stand.

> So basically I'm going to ask the court to – to disregard those things that [AG] told the doctor about in this interview that were not brought out on the stand.

> And basically I can't cross examine her on those issues. For example the pornography and the suicide stuff. That never came out when she was on the stand.

> . . . [S]he's a witness and I can't confront her with that now.
> . . . .

> . . . I can't cross examine her. How can I cross examine her on the issues that she just raised on this interview?

1 RP at 187-88.

The trial judge declined Miller's request to disregard the evidence. The following exchange occurred:

> COURT: There's no confrontation problem because the witness was here on the stand and available to be cross examined about–questioned about things including any statements that she might have made to others relating to the issue.

> COUNSEL: But those were not brought out in the scope of the State's direct is what I'm saying. So I could cross examine her if they were but they weren't.

> COURT: Okay. Well I would have allowed you if you would have asked the questions that she made prior inconsistent statements or statements that she didn't make before to Dr. Copeland–I would have allowed you to ask those questions.
>
> If you want to recall the witness and ask her about it you're certainly free to do that. But there's no confrontation issue as a result.
>
> COUNSEL: I would like to recall to talk about this case then.
>
> COURT: Okay. Well once we get through with the State's case . . . if you want to recall her . . . then recall her.

1 RP at 189.

Dr. Copeland also testified that the findings from AG's physical exam, although consistent with abuse, were not definitive of sexual abuse and were "non-specific." 1 RP at 191. She testified that the redness she observed during the physical exam could be related to a number of reasons unrelated to sexual abuse, like hygiene, a foreign body, or friction with clothing.

After the conclusion of witness testimony, Miller's counsel informed the court that he would not recall AG. Counsel said that Miller told his counsel that he did not think it was necessary to do so.

The court convicted Miller of three counts of first degree rape of a child and two counts of first degree child molestation. The court sentenced Miller to an exceptional sentence. Petitioner's sentence included a condition that he may "not enter into a romantic relationship" with another adult who has minor children without the approval of his sexual deviancy treatment provider and the Department of Corrections. Clerk's Papers (CP) at 38.

Miller appealed, and we affirmed his conviction. *State v. Miller*, No. 53157-7, slip op. at 1-3 (Wash. Ct. App. Jan. 12, 2021) (unpublished).[1] Miller then filed this timely personal restraint petition.

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2053157-7-II%20Unpublished%20Opinion.pdf.

4

ANALYSIS

Where a petitioner has had a prior opportunity for judicial review, the petitioner must show in his PRP that he was "actually and substantially prejudiced by constitutional error or that [his] trial[] suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).

When we review a PRP, we can either dismiss or deny the petition, "transfer the petition to a superior court for a full determination on the merits or a reference hearing, or [] grant the petition." *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013); RAP 16.11(b). Denial is appropriate "where a petitioner fails to make a prima facie showing of actual prejudice"; granting the petition is appropriate if the petitioner shows actual prejudice; and, "a hearing is appropriate where the petitioner makes the required prima facie showing 'but the merits of the contentions cannot be determined solely on the record.'" *Yates*, 177 Wn.2d at 17-18 (quoting *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983)).

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Miller argues that he received ineffective assistance of counsel for three reasons: (1) counsel failed to effectively cross-examine AG, (2) counsel failed to retain a consulting or testifying medical expert to assist in the defense, and (3) counsel failed to investigate medical evidence. We disagree with all of Miller's arguments.

The United States Constitution and our state constitution guarantee a right to effective counsel at all stages of a criminal case. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. To establish ineffective assistance of counsel, a defendant must show that counsel's performance

was (1) deficient, and (2) resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Performance is deficient if it falls below an objective standard of reasonableness based on all the circumstances. *Strickland*, 466 U.S. at 687-88. Conduct that may be characterized as legitimate trial strategy or tactics does not constitute deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Prejudice is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Yates*, 177 Wn.2d at 36 (quoting *Strickland*, 466 U.S. at 694). If a defendant fails to show either prong of the ineffective assistance of counsel test, our inquiry need go no further. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

There is a strong presumption that counsel's assistance was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

A.      *Cross-Examining AG*

Miller argues that counsel was ineffective for failing to effectively cross-examine AG because he failed to elicit alleged inconsistencies in AG's testimony. He argues that AG's recorded interview with Dr. Copeland was inconsistent with her testimony at trial.[2] We disagree.

"Courts generally entrust cross-examination techniques . . . to the professional discretion of counsel." *Davis*, 152 Wn.2d at 720. An attorney is not deficient for failing to cross-examine a witness simply because, in retrospect, he could have more efficiently attacked a witness's credibility. *Davis*, 152 Wn.2d at 720. We recognize that the extent of cross-examination is

---

[2] Miller argues that counsel failed to cross-examine AG about inconsistencies in her testimony and "new statements" made to Dr. Copeland. PRP at 11. However, Miller does not specify which statements were inconsistent or new.

something the attorney must decide quickly and in the heat of the moment. *Davis*, 152 Wn.2d at 720. In order to establish prejudice from deficient cross-examination, the petitioner must show a reasonable probability that, but for counsel's error, the outcome of the trial would be different. *Davis*, 152 Wn.2d at 720.

Miller's argument is somewhat ambiguous. Miller claims that his counsel "declined to pursue any further questioning to effectively test the credibility of [AG's] statements." PRP at 9. Miller also argues that counsel should have cross examined AG regarding new facts mentioned in the forensic interview with Dr. Copeland. But Miller does not explain what questions counsel should have asked, or which specific facts needed to be tested. Instead, Miller argues that "[t]he record in this case clearly demonstrates that there was new information which came to light during Dr. Copeland's testimony and the tape of the forensic interview that was not addressed during the alleged victim's direct testimony." Reply PRP of Pet'r at 7. But we do not formulate arguments for an appellant. *See* RAP 10.3(a)(6). In his reply brief, Miller mentions that the forensic interview included the fact that Miller exposed AG to pornography and that AG had suicidal ideation. Therefore, we interpret Miller's argument to be related to these two issues, and should not scour the record for any other potential inconsistencies.

Here, counsel's decision not to cross-examine AG on these two issues falls within the range of reasonable representation. During AG's conversation with Dr. Copeland, AG informed Dr. Copeland that she was suicidal. AG also informed Dr. Copeland that Miller made her watch pornographic materials. AG also complained of pain, and scarring in her private areas.

AG's testimony was not inconsistent with her statements to Dr. Copeland. AG testified that Miller sexually abused her almost every day since she turned eight years old. AG testified

that she had been struggling with self-harm. AG's father also testified that AG had been having suicidal thoughts.

Counsel cross-examined AG about when the abuse started, how many times Miller abused her, and why AG did not report the abuse sooner. Counsel asked about AG's itching and burning, and he questioned why AG's mother never took her to the doctor to address those symptoms. Counsel then asked about AG's mental health, including her suicidal thoughts.

Miller's counsel thoroughly cross-examined AG—he asked her questions about the abuse, the pain she complained of, the manner and frequency of the abuse, and other details. The only apparent inconsistencies between the testimony AG gave at trial and her statements to Dr. Copeland, was that Miller showed AG pornography. Although counsel chose not to recall AG and re-examine her on this issue, there is a wide range of reasonable possibilities as to why he chose not to. Counsel may have not wanted AG to testify to details of the pornography because these details likely would have been unfavorable to Miller. Thus, counsel's performance was not unreasonable, and therefore not deficient.

Even if counsel's failure to cross-examine AG had been deficient, Miller cannot establish prejudice. In order to establish prejudice from deficient cross-examination, the petitioner must show that the testimony to be elicited had a reasonable probability of changing the outcome of the proceedings. *See Davis*, 152 Wn.2d at 720. Here, the trial court heard testimony from AG, AG's parents, AG's counselor, AG's family, and AG's friends. The testimonies were largely consistent and the timeline was consistent. Miller has not shown that had counsel cross-examined AG about her taped interview that Miller would not have been found guilty.

Thus, Miller has not shown that his counsel was ineffective for failing to effectively cross-examine AG because counsel's performance was neither deficient nor prejudicial.

B.      *Retaining or Consulting a Medical Expert*

Miller also argues that trial counsel was ineffective for failing to retain a consulting or testifying expert to rebut the evidence introduced by the State's medical expert, Dr. Copeland. We disagree.

"'Generally the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics.'" *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 171, 288 P.3d 1140 (2012) (plurality opinion) (quoting *Davis*, 152 Wn.2d at 742). "This presumption of counsel's competence can be overcome . . . by showing counsel failed to conduct appropriate investigations to determine what defenses were available, adequately prepare for trial, or subpoena necessary witnesses." *Davis*, 152 Wn.2d at 742. We consider the nature of the charge and the issues presented when determining whether "effective assistance of counsel [would] require the assistance of expert witnesses to test and evaluate the evidence against a defendant." *State v. A.N.J.*, 168 Wn.2d 91, 112, 225 P.3d 956 (2010). Even if a defendant can show that counsel was deficient for failing to retain an expert, he must still show that the failure prejudiced him. *Yates*, 177 Wn.2d at 35-36.

Here, Dr. Copeland testified that the findings from AG's physical exam, although consistent with abuse, were not "definitive of sexual abuse" and were "non-specific." 2 RP at 200. She also explained that the redness she observed during AG's physical exam could have been caused by a number of reasons unrelated to any sexual abuse such as friction from clothing or issues with hygiene.

Even assuming that counsel was deficient for failing to retain or consult a medical expert, Miller fails to show how that failure could have prejudiced him. Miller does not argue that the failure to retain a medical expert prejudiced him and the record does not support such a finding.

9

Here, Dr. Copeland's testimony produced objective and non-conclusive findings. Her testimony did not confirm or deny any allegations of abuse, so there was nothing for a medical expert to rebut or deny. Thus, the failure to retain a medical expert did not prejudice Miller. And, because Miller cannot show prejudice, his argument does not support a claim of ineffective assistance of counsel.

Miller cites to *In re Pers. Restraint of Farris*, No. 71055-9-I, slip op. at 5 (Wash. Ct. App. Mar. 24, 2014) (unpublished) and *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) to support his argument that failure to retain a medical expert constitutes ineffective assistance of counsel. But these cases are factually distinguishable.

In *Farris*, Division One of this court concluded that defense counsel was ineffective for failing to retain a medical expert. *Farris*, 180 Wn. App. at 2, 18. In *Farris*, the defendant was charged with one count of rape of a child. *Farris*, 180 Wn. App. at 1. A medical expert who had examined the victim five years after the alleged assault, testified that the victim's exam was consistent with "penetrating vaginal trauma." *Farris*, 180 Wn. App. at 4. The defense did not retain a medical expert to rebut the evidence presented by the State's medical expert. *Farris*, 180 Wn. App. at 4-5. Farris submitted a declaration from a medical expert disputing the accuracy and reliability of the State's medical expert. *Farris*, 180 Wn. App. at 12. Defense counsel admitted that his failure to call an expert was not a trial tactic. *Farris*, 180 Wn. App. at 11. Division One noted that "[m]edical evidence is considered one of the strongest types of corroborating evidence," and held that counsel was ineffective for failing to retain an expert because

> [t]here was no direct physical evidence such as DNA or third party eyewitness testimony. Thus, Dr. Vader's medical testimony "was central not only because it constituted the most extensive corroboration that any crime occurred, but because

to undermine it would undermine the alleged victim's credibility and thus the entire prosecution case."

*Farris*, 180 Wn. App. at 14.

Miller also cites to a federal case, *Gersten*, where the second circuit court held that counsel's representation was ineffective because he failed to retain a medical expert. *Gersten*, 426 F.3d at 610-11. In *Gersten*, a medical expert described injuries as being "highly suggestive of penetrating trauma to the hymen." *Gersten*, 426 F.3d at 595. The petitioner submitted affidavits from medical experts who stated that the victim's physical exam did not reveal any evidence of abuse. *Gersten*, 426 F.3d at 600, 608. The court reasoned that because Gersten's trial counsel failed to consult a medical expert, he "essentially conceded that the physical evidence was indicative of sexual penetration." *Gersten*, 426 F.3d at 607-08.

These cases are distinguishable. In both *Gersten* and *Farris*, the medical testimony appeared to corroborate the victims' statements, and the defendants clearly showed how testimony by a rebutting medical expert would have offered alternative explanations for the victim's injuries. *Gersten*, 426 F.3d at 608, *Farris*, 180 Wn. App. at 13-14. Here, to the contrary, Miller introduced no evidence showing that any medical expert could have rebutted the evidence introduced by Dr. Copeland. *See Gallegos v. Ryan*, 820 F.3d 1013, 1035-36 (9th Cir. 2016) (noting that defense counsel's failure to retain a medical expert was not ineffective because defense counsel was unable to obtain anyone who could contradict the State's medical expert). In fact, Miller does not even argue how the failure to retain an expert may have prejudiced him, let alone produce any evidence of such.

Thus, because Miller fails to show that defense counsel's failure to retain a medical expert prejudiced him, his claim of ineffective assistance of counsel fails.

C.      *Investigating Medical Evidence*

Miller argues that counsel was ineffective for failing to investigate medical evidence. We disagree.

To prevail under a "failure to investigate" theory, an individual "must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel" And that the failure to investigate prejudiced the defendant. *Davis*, 152 Wn.2d at 739. Even if a defendant can show that counsel was deficient for failing to investigate, the court must still consider whether counsel's deficient performance prejudiced the defendant. *Davis*, 152 Wn.2d at 739. "In evaluating prejudice, 'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.'" *Davis*, 152 Wn.2d at 739 (quoting *Rios v. Rocha*, 299 F.3d 796, 808-09 (9th Cir. 2002)).

Here, Miller argues, without citation or support in the record, that counsel "failed to perform even a basic investigation," and had an investigation been conducted, counsel "presumably could have produced corroborating medical evidence and/or expert witnesses defending against the prosecution." PRP at 17. Miller admits "whether any information supporting an affirmative defense would have been revealed is largely speculative." Reply PRP of Pet'r at 11.

Miller relies on unsupported, conclusive, and speculative facts to argue that counsel failed to investigate medical evidence. To meet his burden of showing ineffective assistance of counsel under a "failure to investigate" theory, Miller "must show a *reasonable likelihood* that the investigation would have produced useful information not already known" by trial counsel. *Davis*, 152 Wn.2d at 739 (emphasis added). Speculation is not a reasonable likelihood. Thus,

12

Miller fails to meet his burden of showing that counsel's performance was deficient or that any deficiency prejudiced him.

Miller fails to show ineffective assistance of counsel.

## II. UNCONSTITUTIONALLY VAGUE SENTENCING CONDITION

Miller argues that his sentence included an unconstitutionally vague condition that he must not enter into a "romantic relationship" with another adult who has minor children. Suppl. Br. of Pet'r at 5. The State concedes this issue. We accept the State's concession.

Courts may impose crime related prohibitions as conditions of a sentence. RCW 9.94A.505(9). However, under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, due process "requires that citizens have fair warning of proscribed conduct." *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008) (citing *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). A community custody condition that does not provide this warning is unconstitutionally vague and may be reversed. *Bahl*, 164 Wn.2d at 752-53, -62. A term is "unconstitutionally vague if it '(1) . . . does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Bahl*, 164 Wn.2d at 752-53 (citing *Douglass*, 115 Wn.2d at 178).

Here, the trial court imposed the following condition:

> You shall not enter into a romantic relationship with another person who has minor children in their care or custody without prior approval of [Department of Corrections] and your sexual deviancy treatment provider.

CP at 38.

13

No. 55745-2-II

Our Supreme Court previously stated that the term "romantic" is subjective and can provoke endless debate. *State v. Nguyen*, 191 Wn.2d 671, 682-83, 425 P.3d 847 (2018). Other divisions of this court have similarly held that the term "romantic relationship" is unconstitutionally vague. *State v. Peters*, 10 Wn. App. 2d 574, 591, 455 P.3d 141 (2019). However, our Supreme Court has held that the term "dating relationship" was a more definite term that withstands constitutional muster. *Nguyen*, 191 Wn.2d at 683; *State v. Johnson*, 197 Wn.2d 740, 748, 487 P.3d 893 (2021). Because the term "romantic relationship" is unconstitutionally vague, but the term "dating relationship" passes constitutional muster, we remand to the trial court to modify the condition to strike the term "romantic relationship," and if appropriate, include the term "dating relationship."

CONCLUSION

We grant Miller's PRP in part and deny in part and remand to the trial court to strike or revise the vague community custody condition consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Glasgow, C.J.

_____
Price, J.

14