**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>  v.<br><br>JOSEPH ALLEN SHREVE,<br><br>          Appellant. | No.  57658-9-II<br><br><br>PUBLISHED OPINION |

PRICE, J.  — Joseph Allen Shreve appeals a community custody condition stemming from a second degree burglary conviction.  The condition prohibited Shreve from having *hostile contact* with law enforcement officers or first responders.  Shreve's twelve-month community custody term ended on June 30, 2023.

Shreve argues that the condition is unconstitutionally vague, insufficiently crime-related, and overly broad because it infringes on his First Amendment rights.

Although Shreve's challenge is moot, we address his challenge under the public interest exception.  We hold that the condition is unconstitutionally vague.

FACTS

In March 2022, Shreve attended a party at a hotel.  Around 4:00 a.m., he got into a physical altercation with another individual at the hotel.  A hotel security guard intervened.  When approached by the security guard, Shreve drew a knife and lunged toward him.  The security guard blocked the attack and disarmed Shreve.  The security guard confiscated the knife and brought Shreve to the lobby.

No. 57658-9-II

Police were dispatched. Upon arrival, Officer Hannity saw Shreve seated in the lobby while the security guard stood nearby. Shreve appeared to be intoxicated and angry. Although Officer Hannity and the security guard initially decided to allow Shreve to leave the hotel without his knife, Shreve escalated the situation by suddenly and aggressively moving toward the security guard. As the security guard and the other police officers at the scene told Shreve to leave the hotel premises, Shreve attempted to elbow two nearby officers. The officers forced Shreve to the ground and attempted to handcuff him. Ultimately, Officer Hannity was forced to use his taser to subdue Shreve.

Shreve was initially charged with second degree assault with a deadly weapon enhancement and resisting arrest. But on June 30, 2022, Shreve pleaded guilty to a single count of second degree burglary as part of a *Barr*[1] plea.

Shreve was sentenced the same day. As a first-time offender, Shreve was sentenced to one day of confinement and twelve months of community custody. The sentencing court imposed several community custody conditions, including:

No hostile contact w[ith] law enforcement/first responders.

Clerk's Papers (CP) at 22.

Shreve appealed. But prior to his appeal being considered, Shreve's term of community custody ended.

---

[1] *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 271, 684 P.2d 712 (1984) (holding that a trial court may accept a guilty plea to an amended charge lacking factual support if the facts support the original charge).

No. 57658-9-II

ANALYSIS

Shreve argues that the community custody condition prohibiting him from having "hostile contact" with law enforcement is unconstitutionally vague and not crime-related. Shreve also argues that the condition is overbroad and infringes on his First Amendment rights.

I. THOUGH MOOT, SHREVE'S APPEAL IS OF CONTINUING AND SUBSTANTIAL PUBLIC INTEREST

Shreve is no longer subject to his community custody conditions. As both parties acknowledge, this makes Shreve's appeal moot. Nevertheless, both parties ask us to address Shreve's challenge to the no-hostile-contact condition because they both believe the issue is of continuing and substantial public interest. We agree.

We generally decline to address moot issues. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). An issue is moot when we are unable to provide effective relief. *Id.* "The expiration of a sentencing term technically renders a case moot." *State v. T.J.S.-M.*, 193 Wn.2d 450, 454, 441 P.3d 1181 (2019).

We may still address the moot challenge if it presents a matter of continuing and substantial public interest. *Id.* To determine if a moot issue meets this public interest exception, we consider " '[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question.' " *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Hunley*, 175 Wn.2d at 907). An additional consideration is whether the moot issue is likely to evade review. *See In re Pers. Restraint of Bovan*, 157 Wn. App. 588, 593, 238 P.3d 528 (2010).

3

No. 57658-9-II

Although clearly moot, Shreve's appeal meets the requirements for the public interest exception. First, a constitutional challenge to a court-imposed community custody condition is not necessarily a private issue, especially when the condition, like this one, concerns the behavior of offenders and their interaction with law enforcement and first responders in the community. Regarding the second and third considerations, community custody conditions, if successfully requested by the State, are likely to be repeatedly imposed by trial courts. Yet, it is possible that some community custody conditions could evade review because, like here, the community custody term expires before any authoritative guidance could be provided about their constitutionality. Based on these considerations and consistent with the urging of both parties, we choose to address Shreve's otherwise moot appeal.

## II. THE NO-HOSTILE-CONTACT CONDITION WAS UNCONSTITUTIONALLY VAGUE

Shreve's principal argument is that his community custody condition is unconstitutionally vague.[2] He asserts the term "hostile" is not subject to a clear definition and is especially susceptible to arbitrary enforcement because it could "encompass a wide range of everyday conduct" and permit law enforcement officers to decide subjectively for themselves what constitutes hostile behavior. Appellant's Opening Br. at 8.

The State responds that the term "hostile" is not vague when viewed in the context of Shreve's conduct. The State argues that the condition prohibits Shreve from engaging in "similar hostile interactions, marked by shouting and physical aggression when contacted by police officers." Br. of Resp't at 12. The State also asserts that the condition is limited by the

---

[2] Shreve also argues the community custody condition is not crime-related. We assume, without deciding, that the condition is sufficiently crime-related.

4

No. 57658-9-II

circumstances of, and documents related to, his arrest and does not permit law enforcement officers "unfettered authority to define hostile contact." Br. of Resp't at 11.

We agree with Shreve.

We review community custody conditions for an abuse of discretion. *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021). Sentencing courts have broad discretion to impose community custody conditions. *State v. Geyer*, 19 Wn. App. 2d 321, 327, 496 P.3d 322 (2021). Thus, we will only overturn a condition when it is manifestly unreasonable. *State v. Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). A condition is manifestly unreasonable when it is unconstitutional. *Id*.

Whether a condition is sufficiently specific is a constitutional issue. *See State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). Due process requires that individuals have " 'fair warning' " of what constitutes prohibited conduct. *State v. Sanchez Valencia*, 169 Wn.2d 782, 791, 239 P.3d 1059 (2010) (quoting *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008)). Unlike statutes or ordinances enacted by the legislature, a community custody condition is not presumptively constitutional. *Bahl*, 164 Wn.2d at 753.

We use a two-prong analysis to determine whether a condition is sufficiently specific and not unconstitutionally vague, and both prongs must be satisfied. *See State v. Irwin*, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015). A condition is not unconstitutionally vague if (1) it defines the prohibited conduct so an ordinary person can understand what the condition means, and (2) it provides ascertainable standards to protect against arbitrary enforcement. *Id.*

No. 57658-9-II

A.  THE TERM "HOSTILE" DOES NOT CLARIFY WHAT BEHAVIOR IS PROHIBITED

To satisfy the first prong of the vagueness inquiry, "the proscribed conduct is [required to be] sufficiently definite in the eyes of an ordinary person." *Nguyen*, 191 Wn.2d at 681.  In other words, the community custody condition must inform the ordinary person of what conduct is prohibited.  *See id.* at 678-79.  Still, "some level of ambiguity will always remain in community custody conditions." *Id.* at 681.

The underlying circumstances of the crime and related court documents may provide some context as part of the inquiry.  *See Johnson*, 197 Wn.2d at 748 (considering that the judgment and sentence and related documents will be available to help guide when a condition might be vague when read in isolation).  The standard is not exacting; some uncertainty is permissible.  *See State v. Wallmuller*, 194 Wn.2d 234, 242-43, 449 P.3d 619 (2019).  We may also consider the dictionary definitions of the challenged terms.  *See Bahl,* 164 Wn.2d at 758-59.  A condition is unconstitutionally vague when all of the terms with their dictionary definitions, considered together, are not sufficiently clear to inform an individual of ordinary intelligence what they can and cannot do.  *See Nguyen*, 191 Wn.2d at 680 (citing *Bahl,* 164 Wn.2d at 759); *Sanchez Valencia*, 169 Wn.2d at 785, 794 (holding that a condition prohibiting the appellant from possessing or using "any paraphernalia" that could be used for ingesting or processing controlled substances was vague when "paraphernalia" had multiple definitions and "nothing in the condition as written . . . limits petitioners to refraining from contact with *drug* paraphernalia" (emphasis added)).

Here, the term "hostile" has a wide variety of dictionary definitions, which is indicative of its imprecision in this context.  Indeed, the State's brief includes definitions from two different

6

No. 57658-9-II

sources which show a range of ideas associated with the term.[3] An individual's conduct may be considered hostile when it is "marked by malevolence and a desire to injure," but may also be considered hostile when it is "marked by antagonism or unfriendliness." WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE 1094 (1993). Given the broad range of conduct this term could cover, what the condition prohibits is guesswork. Thus, the ambiguous scope of the term "hostile" fails to provide Shreve with "fair warning" of the type of behavior prohibited by the condition. *See Bahl*, 164 Wn.2d at 752, 758-59. The first prong of the vagueness analysis fails.

B. THE CONDITION IS SUSCEPTIBLE TO ARBITRARY ENFORCEMENT

The inability of the term hostile to provide fair warning to Shreve is compounded by its failure to meet the second prong of the vagueness inquiry. The second prong is only satisfied when there are benchmarks guiding the enforcement of the condition. *Johnson*, 197 Wn.2d at 748. A community custody condition is unconstitutionally vague when enforcement relies on a subjective standard. *Padilla*, 190 Wn.2d at 680.

Here, even assuming Shreve could generally understand what "no hostile contact" means, the condition fails the second prong because it is overly susceptible to arbitrary enforcement. Considering that interactions with police officers are often investigative or even adverse in nature,

---

[3] The two dictionary sources cited by the State are WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1094 (1993) ("(1) 'of or relating to an enemy;' (2) 'marked by malevolence and desire to injure;' (3) 'marked by antagonism and unfriendliness;' and (4) 'adverse to the interest of an owner or possessor of property' "), and BLACK'S LAW DICTIONARY 738 (6th ed. 1990) (" '[h]aving the character of an enemy; standing in the relation of an enemy' " (alteration in original)). Br. of Resp't at 9-10.

No. 57658-9-II

separating hostile contact with law enforcement from an adverse, but non-hostile, contact is simply too subjective to be constitutional.

If an interaction occurred between Shreve and law enforcement, both sides would find themselves in the untenable position of attempting to assess whether and when the contact devolved from an ordinary level of acrimony to a violative level of hostility. Consider the hypothetical traffic stop—even in this most common of interactions with law enforcement, one person's expression of frustration with receiving a ticket could, depending on many *subjective* factors, be considered an interaction with some level of hostility. The State's suggestion that the dynamics of this hypothetical interaction, if it involved Shreve, would be governed by an *objective* standard rooted in Shreve's arrest records is simply unrealistic in the context of the fluid human interactions targeted by this condition.[4] And ultimately, any truly assaultive behavior against law enforcement and first responders is already criminalized to a heightened degree commensurate with their difficult roles in our community. *See* RCW 9A.36.031(1)(e), (g) (criminalizing as "assault in the third degree" an assault against firefighters and law enforcement when the assault would not otherwise rise to the level of first or second degree assault).

Thus, the condition that Shreve have no hostile contact with law enforcement and first responders is invalid because it is unconstitutionally vague—it fails to sufficiently inform Shreve

---

[4] Generally, of course, the responsibility for enforcement of community custody conditions would rest with the offender's community custody officer whose access to, and knowledge about, the offender's arrest documents would provide "meaningful benchmarks to restrict arbitrary enforcement." *Johnson*, 197 Wn.2d at 749. Here, however, it is unclear how any violations of this condition could be determined—unless a violation was subjectively decided so by law enforcement or first responders encountering Shreve in the community, individuals who would not have access to Shreve's arrest documents.

8

No. 57658-9-II

of what conduct is prohibited and relies on an overly subjective standard that risks arbitrary enforcement.[5]

CONCLUSION

However well-intentioned by the sentencing court to protect law enforcement and first responders from enduring undeserved aggressive interactions, this particular community condition cannot withstand constitutional scrutiny.  The condition that Shreve have no hostile contact with law enforcement and first responders is unconstitutionally vague.[6]

We reverse.

_____
PRICE, J.

We concur:

_____
GLASGOW, CJ

_____
VELJACIC, J.

---

[5] Our analysis is dependent on, and limited to, the context of a community custody provision involving law enforcement and first responders.

[6] Because this no-hostile-contact condition is unconstitutionally vague, we agree it may also be overbroad and implicate Shreve's First Amendment rights.  Nevertheless, given that the condition's vagueness, on its own, renders it unconstitutional, we do not separately analyze the condition for these other deficiencies.

9