# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>B.R.,<br><br>          Appellant. | No. 58466-2-II<br><br>ORDER GRANTING MOTION TO<br>PUBLISH AND PUBLISHING OPINION |

   Respondent, Washington Department of Social and Health Services, filed a motion to publish this court's opinion filed on July 2, 2024. After consideration, the court grants the motion. It is now

   **ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

   **ORDERED** that the opinion will now be published.

   **FOR THE COURT**

   **PANEL**: Jj. Lee, Veljacic, Price

                  _____
                  LEE, JUDGE

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 58466-2-II |
| B.R., | |
| Appellant. | UNPUBLISHED OPINION |

LEE, J. — B.R. appeals the superior court's order denying revision of the court commissioner's findings, conclusions, and order committing B.R. to a 180-day involuntary treatment. B.R. argues there is insufficient evidence to support the superior court's finding that he is gravely disabled and that he is substantially likely to commit similar acts to his charged crimes. B.R. also argues he received ineffective assistance of counsel for his counsel's failure to engage an expert witness to testify that B.R. was not gravely disabled.

Because special procedures apply when an individual is in custody pursuant to RCW 71.05.280(3) and the superior court previously made an affirmative special finding pursuant to RCW 71.05.280(3)(b), and because B.R. did not present expert testimony to rebut the State's prima facie evidence of his substantial likelihood to commit similar acts to his charged crimes, the superior court was required to recommit B.R. for up to an additional 180 days. Thus, regardless of whether sufficient evidence supports the superior court's finding that B.R. is gravely disabled, because he was also committed pursuant to RCW 71.05.280(3) and the procedures under RCW 71.05.320(4)(c)(ii), B.R.'s challenge to the commitment order is moot. Additionally, because B.R. challenges his counsel's decision to not engage an expert to testify as to the gravely disabled issue,

No. 58466-2-II

B.R.'s ineffective assistance claim also is moot. We affirm the superior court's order committing B.R. to a 180-day involuntary treatment.

FACTS

A.    BACKGROUND

B.R. has been committed at Western State Hospital (WSH) since 2018, with a diagnosis of schizoaffective disorder and polysubstance use disorder. B.R. has had at least 10 psychiatric admissions at various hospitals since 2011, five of which have been at WSH.

B.R.'s 2018 admission to WSH stemmed from a competency evaluation and treatment for competency during the pendency of his criminal case based on charges of second degree assault-domestic violence (DV) and felony harassment-DV. According to police reports, in late 2017, B.R. and his father had argued over some household rules. B.R. became increasingly agitated, pushed his father down, punched him, placed him in a chokehold, and began strangling him. Throughout this, B.R. yelled statements such as, "'I will kill you.'" Clerk's Papers (CP) at 49. According to medical records, B.R. exhibited symptoms of psychosis during the assault.

WSH determined B.R. was not competent to proceed to trial, his criminal charges were dismissed, and he was civilly committed under RCW 71.05.280(3)(b).[1] Additionally, the superior

---

[1] RCW 71.05.280(3) provides that a person may be civilly committed for treatment if "[s]uch person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086(7), and has committed acts constituting a felony, and as a result of a behavioral health disorder, presents a substantial likelihood of repeating similar acts." RCW 71.05.280(3)(b) states: "For any person subject to commitment under this subsection where the charge underlying the finding of incompetence is for a felony classified as violent under RCW 9.94A.030, the court shall determine whether the acts the person committed constitute a violent offense under RCW 9.94A.030."

2

court made a special finding that B.R.'s conduct constituted a violent offense under RCW 9.94A.030.

B.     PETITION

In February 2023, Dr. Peter Bingcang, B.R.'s treating physician, and Dr. Bradley Antonides, B.R.'s WSH evaluator, filed a petition for an additional 180-day involuntary treatment.[2]  The petition listed two bases under which WSH sought B.R.'s additional commitment: (1) B.R. was "gravely disabled"; and (2) B.R. continued "to be in custody pursuant to RCW 71.05.280(3) and as a result of a behavioral health disorder continue[d] to present a substantial likelihood of repeating acts similar to [his] charged criminal behavior."  CP at 41.  The petition also noted that the superior court had previously made an affirmative special finding under RCW 71.05.280(3)(b) that B.R.'s conduct constituted a violent felony offense.

In a joint declaration in support of the petition, Dr. Bingcang and Dr. Antonides stated that B.R.'s condition had only marginally improved during his commitment, in part due to B.R.'s refusal to comply with recommended psychiatric medications.  B.R. had exhibited aggressive and provocative behaviors and could "quickly become agitated, intrusive (with staff and peers), verbally abusive, disorganized and delusional."  CP at 45.  Dr. Bingcang and Dr. Antonides also stated that B.R. was often "not redirectable" and B.R.'s arguments with others tended to escalate into physical altercations.  CP at 45.

The joint declaration also noted that B.R.'s delusional beliefs continued to motivate his behavior and B.R. showed "little awareness" of his behavioral health disorder.  CP at 47.  B.R.

---

[2]  Dr. Bingcang and Dr. Antonides filed the petition prior to the expiration of a September 2022 order by the superior court committing B.R. to an involuntary 180-day treatment.

displayed "ongoing symptoms of psychosis"; specifically, B.R. exhibited "delusional thinking with persecutory themes, responses to auditory hallucinations, and labile emotions escalating quickly to physical confrontations." CP at 51.

Dr. Antonides attempted to interview B.R. in advance of filing the petition; however, B.R. refused. The petition and joint declaration were based on brief interactions with B.R., "inferred from available records, recent evaluations, observations of staff, review of hospital records and discussion with his treatment team members." CP at 46.

## C. PRELIMINARY STATUS HEARING

In March 2023, the superior court commissioner held a preliminary "status hearing" pursuant to RCW 71.05.320(4)(c)(ii). CP at 57. In that hearing, the commissioner determined that the petition presented prima facie evidence that B.R. continued "to suffer from a behavioral health disorder . . . that results in a substantial likelihood of committing acts similar to the charged criminal behavior." RCW 71.05.320(4)(c)(ii). Because the petition presented prima facie evidence, the commissioner stated in its order that the petition could move forward "on both prongs." CP at 57.

B.R. filed a motion to revise the commissioner's preliminary order, specifically regarding whether the petition presented prima facie evidence. The superior court judge denied the motion.

## D. PETITION HEARING

In May 2023, the commissioner held a hearing on the 180-day petition. Dr. Antonides and B.R. testified.

Dr. Antonides testified to the facts stated above. Additionally, Dr. Antonides stated that following submission of the petition, B.R. had attempted to assault WSH staff when the staff had

tried to persuade B.R. to take medication. Dr. Antonides opined that there was a nexus between B.R.'s behavioral health disorder and the crimes B.R. was charged with in 2018. Because B.R. did not exhibit insight into his behavioral health disorder and often refused to take medication, Dr. Antonides did not think B.R. would continue medication if released into the community. This would "consequently lead potentially to more agitated behavior and assaultive behavior." CP at 122. Thus, Dr. Antonides believed the likelihood of B.R. committing similar acts quite high if he was released in the community.

Dr. Antonides noted that B.R. had reported side effects, specifically tremors, from his medications. WSH had referred B.R. to a neurologist and for an MRI to help resolve the tremors. Dr. Antonides also testified that B.R. was recently fixated on a particular social worker at WSH. In several instances, that social worker "had to be escorted from the ward by staff personnel concerned for her safety." CP at 117. In another incident, B.R. had attempted to force entry into that social worker's office. Dr. Antonides further stated that B.R. had impaired volitional control based on his attempted assaults. Moreover, Dr. Antonides believed B.R.'s placement at WSH with the available security, psychiatric support, and 24-hour monitoring was most appropriate.

B.R. testified that he had been experiencing tremors due to his medication. Throughout his direct examination, B.R. consistently spoke over both his attorney and the commissioner. B.R. also spoke about his purported experience in Portugal and as a former U.S. marshal. B.R. did not present any expert witness testimony regarding his behavioral health condition.

The commissioner orally ruled that based on the petition and the testimony of Dr. Antonides and B.R., there was clear, cogent, and convincing evidence that B.R. was gravely

disabled under RCW 71.05.020(25)(b).[3]  The commissioner found that as a result of B.R.'s schizoaffective disorder, he continued to manifest "a severe deterioration in his routine functioning shown by repeated, escalating, and significant loss of both cognitive and volitional control."  CP at 137.  Instances of B.R.'s lack of volitional control included his "lack of insight into his specific condition, ongoing delusions, and frequent episodes of behavioral dysregulation including aggressive behavior both with peers and staff with a particular focus on a specific social worker."  CP at 137-38.

The commissioner also granted the petition on the basis that B.R. was substantially likely to commit similar acts to those of his charged crimes.  The commissioner pointed to Dr. Antonides' testimony about impairments to B.R.'s judgment and volitional control, the reported incidents with the social worker, and Dr. Antonides' opinion that B.R. presented a substantial likelihood of "resuming those acts similar to the charged offense of assault."  CP at 139.

In its written order committing B.R. to 180 days' involuntary treatment, the commissioner entered findings of fact and conclusions of law, and incorporated her oral findings into the written order.  The written order included several facts supporting the commitment.

E.      MOTION TO REVISE

B.R. filed a motion to revise the commissioner's order committing him to 180 days of involuntary treatment.  B.R. asserted that the State failed to prove by clear, cogent, and convincing evidence that he was gravely disabled.

---

[3] RCW 71.05.020(25)(b) provides that a person is gravely disabled when he or she "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety."

As to the second ground for his commitment, B.R. acknowledged that special procedures apply when a person is in custody pursuant to RCW 71.05.280(3). However, B.R. argued that the commissioner's preliminary finding that the State presented prima facie evidence that B.R. "continue[d] to suffer from a behavioral health disorder that results in a substantial likelihood of committing acts similar to the charged criminal behavior" was erroneous. CP at 78. Nevertheless, B.R. noted that the superior court had issued an order denying revision of the commissioner's prima facie finding.[4]

During the hearing on B.R.'s motion to revise the commissioner's 180-day commitment order, B.R.'s counsel briefly mentioned the prima facie finding:

> This is a slightly different situation than we would normally come before the Court on revision in that a portion of this petition was previously decided by the Court. I just wanted to make sure that I included the second portion of my memorandum to account for that and also just to make sure I'm ensuring that if [B.R.] chooses to appeal on the ultimate judgment of the Court with regard to civil commitment it would be included.
>
> But as a procedure for a petition for recommitment such as this indicates, is that a prima facie finding be made as a preliminary stage of the proceeding that was made that was revised for revision which was denied. So I fully acknowledge that, and I'm not necessarily asking the Court for a reconsideration of that decision. I'm including it so that now we have a final judgment if [B.R.] chooses to exercise his right to appeal, then it could all be included in one.

Verbatim Rep. of Proc. (VRP) at 6. However, B.R.'s counsel proceeded to say: "But the main issue before the Court today is the decision that was made by the commissioner at a full contested

---

[4] B.R. referenced the order denying revision of the prima facie finding as a matter that "is currently on appeal." CP at 79. However, B.R. proceeded to state, "This section of [B.R.]'s motion for revision is being included since the Court has now issued a final judgment on this issue." CP at 79. The record does not contain any information regarding a separate appeal or whether that appeal is ongoing. Further, B.R. appears to acknowledge the appeal is moot in light of the final judgment issued.

hearing with regard to the issue of disability." VRP at 6. B.R.'s counsel otherwise advanced arguments only with regard to grave disability.

The superior court denied B.R.'s motion to revise.

B.R. appeals.

## ANALYSIS

B.R. appeals the superior court's denial of his motion to revise the commissioner's order committing him to 180 days of involuntary treatment.[5] Specifically, B.R. argues that the State failed to prove by clear, cogent, and convincing evidence that he is gravely disabled and presents a substantial likelihood of committing acts similar to his charged criminal behavior. B.R. also argues that the State failed to prove there is no less restrictive alternative (LRA) to involuntary commitment and that he received ineffective assistance of counsel for failure to engage an expert witness. We disagree.

A.    STANDARD OF REVIEW

Commissioner rulings are subject to revision by the superior court. RCW 2.24.050. "Following a denial of a motion to revise a commissioner's ruling, we 'review the superior court's ruling, not the commissioner's decision.'" *In re Det. of A.M.*, 17 Wn. App. 2d 321, 330, 487 P.3d 531 (2021) (quoting *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020)). "[T]he findings and orders of a court commissioner not successfully revised become the orders and

---

[5] The order at issue in this case has expired. However, because involuntary commitment orders have collateral consequences for future commitment determinations, this appeal is not moot based on the expiration of the commitment order. *In re Det. of M.K.*, 168 Wn. App. 621, 622, 279 P.3d 897 (2012).

findings of the superior court." *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017).

Courts review challenges to the sufficiency of the evidence in a light most favorable to the State. *A.M.*, 17 Wn. App. 2d at 330. "When the standard is 'clear, cogent, and convincing . . . the findings must be supported by substantial evidence in light of the highly probable test.'" *In re Det. of B.M.*, 7 Wn. App. 2d 70, 85, 432 P.3d 459 (alteration in original) (internal quotation marks omitted) (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)), *review denied*, 193 Wn.2d 1017 (2019). In other words, the evidence must show that a fact at issue is highly probable. *L.K.*, 14 Wn. App. 2d at 550. This court will not disturb a superior court's findings if those findings are supported by substantial evidence "'which the lower court could reasonably have found to be clear, cogent and convincing.'" *B.M.*, 7 Wn. App. 2d at 85 (quoting *LaBelle*, 107 Wn.2d at 209).

B.      WASHINGTON INVOLUNTARY TREATMENT ACT (ITA)

1.      Legal Principles

a.      Gravely disabled

Under the ITA, chapter 71.05 RCW, a person may be involuntarily committed if, as a result of a behavioral disorder, that person is gravely disabled or presents a likelihood of serious harm. *See* RCW 71.05.150, .245, .280; *LaBelle*, 107 Wn.2d at 201-02. A person is gravely disabled when

> as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.020(25). Relevant here is subsection (b).

RCW 71.05.020(25)(b) contains two requirements: first, the State must demonstrate that the person "'manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control'" and second, that that person "'is not receiving such care as is essential for his or her health or safety.'" *LaBelle*, 107 Wn.2d at 205 (quoting former RCW 71.05.020(1)(b) (1979)). Additionally, to be gravely disabled under prong (b), the individual must be unable to make rational decisions regarding his or her treatment because of a severe deterioration of mental functioning. *Id.* at 208.

> b. Substantial likelihood of committing acts similar to the charged criminal behavior as a result of a behavioral health disorder

RCW 71.05.280 provides another ground for involuntary commitment. The State may petition that a person be committed for further treatment pursuant to RCW 71.05.320 if "[s]uch person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086(7), and has committed acts constituting a felony, and as a result of a behavioral health disorder, presents a substantial likelihood of repeating similar acts." RCW 71.05.280(3). Further, if the "charge underlying the finding of incompetence is for a felony classified as violent under RCW 9.94A.030, the court shall determine whether the acts the person committed constitute a violent offense under RCW 9.94A.030." RCW 71.05.280(3)(b).

RCW 71.05.320 outlines a different procedure for the continued commitment of individuals incompetent to stand trial and when a court has determined that the underlying charge was a violent felony. RCW 71.05.320(4)(c); *In re Det. of M.W.*, 185 Wn.2d 633, 643-44, 374 P.3d

1123 (2016). In such cases, there must be a preliminary hearing on the State's petition prior to a full evidentiary hearing. RCW 71.05.320(4)(c)(ii); *M.W.*, 185 Wn.2d at 644.

In the preliminary hearing, the State must present prima facie evidence that the person, as a result of a behavioral health disorder, presents a substantial likelihood of committing acts similar to the charged criminal behavior. *M.W.*, 185 Wn.2d at 644. Prima facie evidence is established by the requirements set forth in RCW 71.05.290. *Id.* For instance, the State's petition must be supported by affidavits from medical professionals at the treatment facility and the affidavits "shall describe in detail the behavior of the detained person which supports the petition and shall explain what, if any, less restrictive treatments which are alternatives to detention are available to such person." RCW 71.05.290(2)(a), (b).

If the State fails to meet its burden, the petition must be dismissed "unless the State can proceed on alternative grounds for recommitment." *M.W.*, 185 Wn.2d at 644. An individual may rebut the State's prima facie evidence by presenting "proof through an admissible expert opinion that the person's condition has so changed such that the behavioral health disorder . . . no longer presents a substantial likelihood of the person committing acts similar to the charged criminal behavior." RCW 71.05.320(4)(c)(ii).

If the individual is unable to present an admissible expert opinion, "the commitment shall continue for up to an additional one hundred eighty-day period." RCW 71.05.320(4)(c)(ii); *M.W.*, 185 Wn.2d at 644 ("If the individual fails to rebut the State's evidence, then the court will order an additional period of 180 days of commitment."). However, if the individual does rebut the State's prima facie evidence, the parties proceed to a full evidentiary hearing, same as other evidentiary hearings under the ITA. *M.W.*, 185 Wn.2d at 644-45. At the full evidentiary hearing,

it "remains the State's burden to prove recommitment for an additional 180-day period is warranted through clear, cogent, and convincing evidence; otherwise, the person is released." *Id.* at 645.

2.     B.R.'s Challenges

a.     Substantial likelihood of committing similar acts

B.R. challenges the substantial likelihood of committing acts similar to the charged criminal behavior as a result of a behavioral health disorder ground for his commitment. B.R. lumps his challenge to the substantial likelihood ground together with his challenge to the commissioner's grave disability finding. Then, in his brief, B.R. offers only a single sentence regarding the commitment based on a substantial likelihood of committing acts similar to the charged criminal behavior as a result of a behavioral health disorder; specifically, B.R. argues his instances of physical aggression "do not establish by clear, cogent and convincing evidence of a substantial likelihood[] [he] would commit an act similar to an assault in the second degree." Br. of Appellant at 12. However, B.R. does not advance any additional argument on this issue.

"It is an appellant's responsibility to provide 'argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record.'" *Romero v. Dep't of Soc. & Health Servs.*, ___ Wn. App. 2d ___, 544 P.3d 1083, 1093 (2024) (quoting RAP 10.3(a)(6)). Even if B.R.'s single sentence in his brief is sufficient to raise the issue of whether he presents a substantial likelihood of committing similar acts to his charged criminal behavior as a result of a behavioral health disorder, B.R. fails to support his argument with "'pertinent authority, references to the record, or meaningful analysis.'" *Id.* (quoting *Cook v. Brateng*, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010)). "Passing treatment of an issue or lack

of reasoned argument is insufficient to merit judicial consideration." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013). Thus, we decline to address B.R.'s challenge based on the substantial likelihood of committing acts similar to the charged criminal behavior as a result of a behavioral health disorder ground for commitment.

        b.     Gravely disabled challenge is moot

B.R. argues that there was insufficient evidence to establish that he is gravely disabled. Specifically, he argues that the record "reveals no evidence of recent, severe deterioration in his condition" or evidence that he "will decompensate from his current condition if released." Br. of Appellant at 21, 23. B.R.'s challenge is moot.

The record shows that B.R. was committed under two separate grounds: (1) he is gravely disabled under RCW 71.05.020(25)(b), and (2) he presents a substantial likelihood of repeating acts similar to his charged criminal behavior. B.R. was in custody pursuant to RCW 71.05.280(3), and the superior court previously "made a special finding that [B.R.'s] underlying offense was a violent offense under RCW 9.94A.030." CP at 20. The parties do not dispute that B.R. was in custody pursuant to RCW 71.05.280(3) or that the superior court made the special finding that his underlying offense was a violent felony offense.

Because B.R. was in custody pursuant to RCW 71.05.280(3) and because the superior court previously made the finding that his act constituted a violent felony offense, the special commitment procedure under RCW 71.05.320(4)(c)(ii) is triggered. *See* RCW 71.05.280(3)(b); RCW 71.05.320(4)(c)(ii). The record shows that, in accordance with those procedures, B.R. had a preliminary hearing. The record also shows that a commissioner determined that the State

presented prima facie evidence that B.R. presented a substantial likelihood of committing acts similar to the charged criminal behavior as a result of a behavioral health disorder.

B.R. did not present expert witness testimony to rebut the State's prima facie evidence during the preliminary hearing. Based on RCW 71.05.320(4)(c)(ii), the commissioner was required *at that time* to order an additional period of up to 180 days of involuntary commitment. RCW 71.05.320(4)(c)(ii); *M.W.*, 185 Wn.2d at 644. Nevertheless, the commissioner instructed the parties to instead move forward to a full, contested evidentiary hearing addressing both grave disability and the substantial likelihood of committing acts similar to the charged criminal behavior. The record is devoid of any evidence that B.R. successfully rebutted the State's prima facie evidence at the preliminary hearing showing B.R. presented a substantial likelihood of committing acts similar to the charged criminal behavior as a result of a behavioral health disorder.

At the evidentiary hearing, the commissioner noted the preliminary hearing and that the superior court found that the State presented prima facie evidence. The commissioner asked B.R. whether he planned to offer expert testimony. B.R.'s counsel responded:

> [B.R.] is not offering an expert opinion at this time. I have explained the procedure to [B.R.] and the outcome of that particular basis of commitment. He disagrees with it but we do not have an expert we are presenting at this time.

CP at 112.

Setting aside the fact that B.R. was not entitled to a full evidentiary hearing on the substantial likelihood of committing similar acts ground for commitment, the fact that B.R. failed to present "proof through an admissible expert opinion that [his] condition ha[d] so changed" at the full evidentiary hearing dooms his appeal. RCW 71.05.320(4)(c)(ii). RCW 71.05.320(4)(c)(ii) states that the commitment "*shall* continue" unless B.R. presents admissible expert testimony that

his condition had improved. (Emphasis added.) B.R. did not present any expert testimony regarding his condition.

B.R.'s assignment of error to the substantial likelihood of committing similar acts ground for commitment assumes that he successfully rebutted the State's prima facie evidence and that the State needed to prove the substantial likelihood of committing similar acts ground through clear, cogent, and convincing evidence. *M.W.*, 185 Wn.2d at 645. But based on RCW 71.05.320(4)(c)(ii) and evidence in the record, B.R. never rebutted the State's prima facie evidence. Therefore, and regardless of whether B.R. is gravely disabled, the commissioner's order committing B.R. to 180 days of involuntary treatment is valid.

A case is moot if a court is unable to provide effective relief. *State v. Shreve*, 28 Wn. App. 2d 785, 789, 538 P.3d 958 (2023). Here, even if we assume that there was insufficient evidence that B.R. is gravely disabled, the commitment order would still stand based on the ground that there is substantial likelihood of his committing acts similar to the charged criminal behavior as a result of a behavioral health disorder. A challenge to a commitment order is technically moot if an individual is committed on an alternative ground and the alternative ground is valid. *See M.W.*, 185 Wn.2d at 648. Therefore, because effective relief cannot be provided, B.R.'s challenge to the 180-day involuntary treatment order is moot.[6]

---

[6] B.R. also assigns error to the 180-day involuntary treatment order because the State failed to prove there is no LRA. However, B.R. fails to present any argument on the issue. "[L]ack of reasoned argument is insufficient to merit judicial consideration." *Brownfield*, 178 Wn. App. at 876; RAP 10.3(a)(6). Thus, we decline to address this issue.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

B.R. argues he received ineffective assistance of counsel based on his counsel's failure to "call an expert to testify that B.R. was not gravely disabled." Br. of Appellant at 28. B.R. contends that his counsel's decision to not call an expert, despite his request for one, "cannot be considered tactical trial strategy . . . because only an expert could have refuted" Dr. Antonides' testimony during the hearing. Br. of Appellant at 28. We disagree.

1.     Legal Principles

In civil commitment cases, Washington courts apply the *Strickland*[7] test when analyzing claims of ineffective assistance. *In re Det. of T.A.H.-L.*, 123 Wn. App. 172, 179, 97 P.3d 767 (2004). An individual "must show both (1) deficient performance and (2) resulting prejudice to prevail on an ineffective assistance claim." *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017). "The claim fails if the defendant fails to satisfy either prong." *In re Involuntary Treatment of A.J.*, 196 Wn. App. 79, 84, 383 P.3d 536 (2016).

Counsel's performance is deficient if it falls below an objective standard of reasonableness based on the circumstances. *Estes*, 188 Wn.2d at 458. Prejudice is established if "there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Id.* (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

An attorney's decision to call or not call a particular witness "'is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics.'" *In re Pers. Restraint*

---

[7] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

*of Lui*, 188 Wn.2d 525, 545, 397 P.3d 90 (2017) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 171, 288 P.3d 1140 (2012) (plurality opinion)). "A defendant can overcome this presumption by showing that counsel failed to adequately investigate or prepare for trial." *State v. Davis*, 174 Wn. App. 623, 639, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013).

### 2. No Ineffective Assistance

B.R. argues that he received ineffective assistance of counsel when counsel failed to hire an expert "to testify that B.R. was not gravely disabled" to refute Dr. Antonides's testimony.[8] Br. of Appellant at 28. B.R. asserts that an expert "could have refuted" Dr. Antonides' testimony, and his counsel's failure to call an expert was based on a failure to adequately prepare for or investigate his case. Br. of Appellant at 28.

As discussed above, B.R.'s appeal with regard to error based on grave disability is moot. Therefore, any ineffective assistance claim based on counsel's representation resulting in a commitment based on a finding of grave disability also is moot. Thus, we do not address B.R. ineffective assistance of counsel claim.

Even if any error based on grave disability is not moot, B.R.'s claim that his counsel was ineffective by failing to engage an expert to testify that he was not gravely disabled fails. Here, the record shows that B.R.'s counsel did not call an expert to testify at either the preliminary hearing or the evidentiary hearing. During the evidentiary hearing, B.R.'s counsel explained to the commissioner that she had described to B.R. the procedure under RCW 71.05.320(4)(c)(ii) and

---

[8] We note that B.R. does not raise an evidentiary challenge regarding the admissibility of Dr. Antonides' testimony.

the consequence of not calling an expert. B.R.'s counsel noted that B.R. disagreed with her decision. Thus, the record shows that B.R.'s counsel was familiar with the procedures under RCW 71.05.320(4)(c)(ii) and the consequences of not having an expert.

The record also shows that B.R.'s counsel repeatedly challenged whether the State presented prima facie evidence at the preliminary hearing. It is conceivable that the decision to not present expert testimony was tactical insofar as B.R.'s counsel could not find an expert who would testify that B.R.'s condition had improved. *See Kyllo*, 166 Wn.2d at 863 ("When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient."). This proposition is bolstered by B.R.'s own testimony during both the evidentiary hearing and the hearing on his motion to revise where B.R. continually and inappropriately interrupted the proceedings and was so incoherent that almost no question could be asked of him.

B.R. makes the conclusory statement that an expert "could have refuted" Dr. Antonides. Br. of Appellant at 28. B.R. does not support his statement with any evidence in the record that his counsel's decision to not call an expert was a failure to investigate or properly prepare. Because courts presume an attorney's decision to call or not call a witness is a matter of legitimate trial tactics and because B.R. has not overcome this presumption, this court should hold that his counsel's performance was not deficient. *Lui*, 188 Wn.2d at 545; *Davis*, 174 Wn. App. at 639. Therefore, B.R.'s claim of ineffective assistance fails.

We affirm.

No. 58466-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Veljacic, A.C.J.

Price, J.